## In the matter of the Will of ESTHER R. TULLER, DECEASED.

1. WILL—*power of married woman to make.* Under the statute of 1845, a married woman had power to dispose of her separate estate, as distinguished from her property generally; and since the passage of the act of 1861, entitled "An act to protect married women in their separate property," which makes all the property of a married woman her separate estate, she has power to dispose of all her property by will, the same as any other person.

2. SAME—*of feme sole, not revoked by marriage.* The reason why marriage revoked a will of a *feme sole* at common law being, that a will is, in its nature, ambulatory, and a married woman having no power to make a will, her marriage would destroy its ambulatory character, does not exist since the passage of the act of 1861, making all her property her separate estate, which, by the act of 1845, she has power to dispose of by will; and the further reason given, that marriage of a *feme sole* is such an entire change in her condition and relations that it works a revocation of her will, equally fails, as, since the act of 1861, her marriage works no essential change in her condition and relations as respects her property. It therefore follows that, since the act of 1861, the will of a *feme sole* is not revoked by marriage, the reason of the rule no longer existing, and in this respect her will stands on the same footing with the will of a man.

3. Where a widow, who had three children, executed a will in 1869, and afterwards, and during the same year, married, and, in 1874, died, having made no other will, and having had no children by her last marriage, leaving her three children by her first marriage surviving her, it was *held*, that there was no revocation of her will by her marriage.

4. ACT OF 1872 *in regard to revocation of wills by marriage.* The enactment which went into force July 1st, 1872, that "a marriage shall be deemed a revocation of a prior will," was prospective in effect, and had reference only to marriages which should take place thereafter, and did not apply to marriages which had been had prior to the passage of the act.

5. FORMER DECISION—*the rule in Tyler* v. *Tyler*, 19 *Ill.* 151, *qualified.* The rule announced in the case of *Tyler* v. *Tyler*, that a subsequent marriage is a revocation of a will, is so qualified as not to apply to a case where the testator has children, who would inherit to the exclusion of the husband or wife.

6. CONSTRUCTION OF STATUTES. The doctrine applicable to all laws is, that, generally, they are to be considered as prospective, and not to prejudice or affect the past transactions of the citizen. Not that the legislature can not, in some cases, make laws with a retrospective operation, but that it is not to be supposed they so intended, unless that intention has been manifested by the most clear and unequivocal expressions.

APPEAL from the Circuit Court of Peoria county; the Hon. JOSEPH W. COCHRAN, Judge, presiding.

Messrs. COOPER & BASSETT, for the appellant.

Messrs. McCULLOCH, STEVENS & WILSON, and Messrs. STARR & CONGER, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This is an appeal by Lydia A. Cole, residuary devisee and legatee under the will of Esther R. Tuller, deceased, from the order and judgment of the circuit court of Peoria county, refusing to admit said will to probate, such order and judgment having been made on appeal in reversal of an order of the county court admitting the will to probate.

The facts are, that Esther R. Tuller, on the 20th day of May, 1869, made and published her will, she being then a widow, and having at the time, living, three children by a former marriage, all of whom are still in full life.

Afterwards, on the 2d of September, 1869, the testatrix was married to one Marcus Hosmer, from whom she was, on the 16th day of December, 1873, divorced by decree of the

circuit court of Peoria county, upon bill filed by her for that purpose. The testatrix died on the 6th of March, 1874, having made no other will, and having had no child by said Hosmer.

The question presented for consideration is, whether there was a revocation of the will by the marriage with Hosmer.

It is the old and well settled rule of the common law, that the will of a *feme sole* is revoked by her subsequent marriage; and it is contended that, under this rule, the will was revoked. The reason of the rule was, that a will is, in its nature, ambulatory during the testator's life, and can be revoked at his pleasure; that the marriage destroys the ambulatory nature of the will, and leaves it no longer subject to the wife's control; and that it is against the nature of a will to be absolute during the testator's life; it is therefore revoked, in judgment of law, by such marriage. 4 Kent's Comm. 527; 2 Greenlf. Ev. sec. 684.

That reason does not exist under our present statute of 1872, which gives to every female of the age of 18 years, the power to devise her property by will or testament.

Did it exist under the Statute of Wills of 1845, in force up to 1872?

The 1st section of the Statute of Wills of 1845 provides as follows: "Every person aged 21 years, if a male, or 18 years, if a female, or upwards, and not married, being of sound mind and memory, shall have power to devise all the estate    *    *    *    which he or she hath, or at the time of his or her death shall have, in and to any lands, etc. All persons of the age of 17 years, and of sound mind and memory, married women excepted, shall have power to dispose of their personal estate by will or testament; and married women shall have power to dispose of their separate estate, both real and personal, by will or testament, in the same manner as other persons."

The statute draws a manifest distinction between the property generally of married women, and their separate property,

giving power to dispose of the latter by will, but not of the former. The strict rules of the old common law, as is well known, would not permit the wife to take or enjoy any real or personal estate separate from or independent of her husband. But courts of equity have admitted the doctrine that a married woman is capable of taking real and personal estate to her own separate and exclusive use; and whenever real or personal property is given or devised or settled upon a married woman for her separate and exclusive use, her interest will be protected in equity against the marital rights and claims of her husband and of his creditors. The separate estate of a married woman was a creature of equity at the time of the passage of the statute of 1845.

By the statute of 1861, entitled "An act to protect married women in their separate property," all the property of a married woman is made her sole and separate property, and is thereby made as fully her separate estate as any separate estate which she could in any way have had at the date of the passage of the act of 1845, and after, except that the statute of 1861 gives no power of disposing of her estate. Such being the case, then, that, under the statute of 1861, all of the property of a married woman is made her separate estate, we know no sufficient reason why, since the act of 1861, the statute of 1845, giving to married women the power to dispose of their separate estate by will, should not have operative effect in respect to all of a married woman's property, and be construed as enabling her to dispose of all her property by will in the same manner as other persons. The reason, then, for holding the will of a _feme sole_ to be revoked by marriage, would no longer exist, as the marriage would not destroy the ambulatory nature of the will, but still leave it subject to the wife's control.

The further reason given, that the marriage of a _feme sole_ is such an entire change in her condition and relations that it is generally held to work a revocation of her will, (1 Redfield on Wills, 292,) equally fails, as, since the act of 1861,

her marriage works no essential change in her conditions and relations as respects her property. We are of opinion, then, that, since the act of 1861, the will of a *feme sole* is not revoked by marriage, the reason of the rule no longer existing. Her will, then, in this respect, must be regarded as standing upon the same footing with the will of a man. As respects his will, marriage is not a revocation of it, but marriage and the birth of a child are an implied revocation of a will previously made. Such was recognized by this court to be the rule in *Tyler* v. *Tyler*, 19 Ill. 151, and the authorities there referred to. But it was there held that, under our statute making the wife heir to the husband, and the husband heir to the wife, where there is no child or descendant of a child, marriage is, in the absence of facts showing an intention to die testate arising subsequent to the marriage, a revocation of a will of the husband, made prior to the marriage, disposing of his entire estate without making provision in contemplation of the relations arising out of the marriage.

It is insisted that the present case falls within that decision, and is controlled thereby.

The facts of that case were, that Stephen H. Tyler and the complainant in the suit intermarried in this State in 1842, and here lived as husband and wife until his death, in 1855; that he died, never having had a child, and leaving a considerable estate in this State; and that the defendants claimed his estate under a will executed in the State of Connecticut, where Tyler then lived, in 1834; which will devised his entire estate to his blood relatives. Under such circumstances, in view of our Statute of Descents, providing that, when there shall be a widow, and no child or descendant of a child of the intestate, then the one-half of the real estate, and the whole of the personal estate, shall go to such widow, it was held, that the marriage was a revocation of the will.

The reason of the rule of the English courts, that marriage and the birth of a child were, but that marriage alone was not, a revocation of a will, was recognized to be, that,

by the law of descents there, the child may inherit the parents' estate, but that the wife and husband could not inherit from each other. But that, as under our law, the wife and husband may inherit from each other the one-half of each other's lands, in case there be no child or lineal descendant, the *reason* of the common law rule would require that marriage alone would revoke a will, and the rule was made to conform to the reason of it. and it was held, that marriage alone worked a revocation of the will. In that case there was no child of the marriage, and from the instant of the marriage, upon the death of the husband without a will, one-half of his real estate, and all his personal estate, would have gone to the widow.

In the present case, the testatrix, at the time of the making of her will, and up to the time of her death, and since, had three children living. Had she died at any time during the existence of her marriage, all her property, in the absence of a will, would have gone to these children, and none of it to her husband. Where is the reason, then, to require, in such a case as this, that marriage alone should revoke the will?

Under the laws of this State, in force when the will was made, and since, Hosmer, the husband, could have taken nothing, if there had been no will. The property disposed of by the will was the separate estate of the testatrix. No estate by the curtesy ever became initiate. The marriage did not vest in the husband the personal property of the wife, nor any right to the rents and profits of the real estate, and as his wife had children of her own by her first husband, to inherit, he, Hosmer, could take nothing as her heir at her death.

The sole effect of the revocation would be, to let others inherit her property whom the testatrix had in her mind when she made her will, and purposed should not take her estate. To set aside the will would be to thwart the solemnly declared intention of the testatrix, and that, without benefit to the object of the marriage relation, on whose account, as a new

object of duty to be provided for, the revocation of the will would be brought about.

The revocation of a will which arises from subsequent marriage and birth of a child, is an implied or presumptive revocation.  It is founded upon the reasonable presumption of an alteration of the testator's mind, arising from circumstances since the making of the will, producing a change in his previous obligations and duties.  4 Kent's Comm. 521.

Under the general rule, the circumstance of marriage alone did not lay the foundation of a presumed alteration of the testator's intention, but it was marriage and the birth of a child, and both must have concurred, in order to raise an implied revocation of a will.  *Brush* v. *Wilkins*, 4 Johns. Ch. 506.

There was a qualification of the general rule upon this subject, made in the case of *Sheath* v. *York*, 1 Vesey & Beam. 390, which bears strongly upon the present case.  A widower, having a son and two daughters, devised his estate, real and personal, and then married and had a daughter.  The Ecclesiastical Court held the will to be revoked as to the personal estate, but Sir WM. GRANT thought that there was no ground to presume the will revoked as to the real estate, upon any implied condition annexed to it, or upon any presumed change of intention, where the testator had already an heir apparent, and the revocation would be of no use to the subsequent child, who could not take the land.  It might be revoked as to the personal estate, for that lets in the subsequent child ; but he held, that it was not, in such case, revoked as to the land.

The principle of that decision seems to meet precisely the question now under consideration, and to require a qualification of the general rule laid down in *Tyler* v. *Tyler, supra*, that, under our Statute of Descents, a subsequent marriage is a revocation of a will, and to exclude the application of the rule to the facts of the present case, for the reason that there is no ground to presume the will revoked upon any pre-

sumed change of intention, inasmuch as the testatrix had, at the time of the making of the will, and ever after, three children, and, as was said in *Sheath* v. *York, supra,* the revocation would be of no use to the subsequent husband, as he could not take the property.

But it is said that it does not matter whether the husband or wife do actually become heir to the other or not; that it is enough that the marriage creates the possibility of such a result. But that is not the principle which governs. If it were, then, under the common law rule upon the subject, marriage alone would work a revocation, as, upon a marriage, there would exist the possibility of the birth of a child; and in the case cited, of *Sheath* v. *York,* there was a possibility of the daughter of the subsequent marriage becoming an heir by the death of the son of the former marriage. It is supposed, in the argument, to be like the case of a child born after a subsequent marriage, where it does not matter whether it survives the parent or not; and it is said that there the birth of the issue, and the mere possibility of its becoming an heir by surviving its parent, at once revokes the will.

It is the occurrence of new social relations and moral duties arising by marriage and the birth of issue, raising a presumption of a change of intention in the testator, which impliedly revokes a previous will, and the revocation so made by the occurrence of those events is once for all, and the will is not restored on the subsequent death of the issue contributing to produce the revocation, during the life of the testator.

But under the state of facts in this case, there has been no actual occurrence of the circumstances to afford ground of a presumed intention to revoke the will, but only a possibility of such occurrence taking place.

It is finally insisted, that there is here a statutory revocation of the will by force of the statute of 1872, Laws 1871–2, p. 355, in force July 1, 1872, that "a marriage shall be deemed

a revocation of a prior will;" that, as the will did not take effect, nor were any rights acquired under it, until the testatrix's death, its validity depends upon the law as it then stood at the time of her death; that the statute, though passed after the making of the will, takes effect upon it precisely as though the law had been passed before its execution.

The question is not so much whether the statute affects rights *vested* before its passage, as, what was the intention of the legislature. A law is a rule of civil conduct, and the principle is, that it is a rule for the regulation of future conduct. It is, in the general, true, that no statute is to have a restrospect beyond the time of its commencement; for the rule and law of parliament is, that *nova constitutio futuris formam debet imponere, non præteritis.* 4 Bac. Abr. 636, Statute (C.)

It is the doctrine applicable to all laws, that, generally, they are to be considered as prospective, and not to prejudice or affect the past transactions of the citizen. Not that the legislature can not. in some cases. make laws with a retrospective operation, but that it is not to be supposed they so intended, unless that intention has been manifested by the most clear and unequivocal expressions. *Garret* v. *Wiggins,* 1 Scam. 335; *Bruce* v. *Schuyler,* 4 Gilm. 221; *Thompson* v. *Alexander,* 11 Ill. 54; *Marsh* v. *Chesnut,* 14 id. 223; *Hatcher* v. *Toledo, Wabash and Western Railway Co.* 62 id. 477; *Whitman* v. *Hapgood et al.* 10 Mass. 447; *Somerset* v. *Dighton,* 12 Mass. 383; *Dash* v. *Van Kleek,* 7 Johns. 477; Sedgwick on Stat. & Const. Law, 190–1 *et seq.*

This law of 1872 is not retrospective in terms; there is no indication of the legislative intention that it should be retroactive, and we must regard the intention to have been that it should have only a prospective, and not a retrospective, operation.

We are of opinion, then, that the enactment which went in force July 1, 1872, that "a marriage shall be deemed a revocation of a prior will," was prospective in effect, and had

reference only to marriages which should take place there-
after, and did not apply to marriages which had been had
prior to the passage of the act, and that it is without effect
upon this will of Mrs. Tuller.

Our conclusion is, that the court below erred in reversing
the order of the county court, instead of affirming the same,
and that the judgment of the circuit court should be reversed
and the cause remanded.

*Judgment reversed.*