Spruance for the appellants. The testatrix, then a single woman, and resident in St. Louis, Missouri, made this will on the day of its date, March 21, 1874, and remained a single woman until her marriage with John B. Clemson, the appellant, a citizen of this State, on February 27, 1878, when she removed with him to his residence, in Delaware, and where she lived with him until her death, on August 14, 1878, leaving her said husband to survive her, and without ever having had any issue. The will is offered for probate by the executors therein named; and it was not altered in any manner or republished after the execution of it, or after her marriage to the appellee.
The questions as to the capacity of the testatrix to make a will; the validity of its execution, and whether revoked or annulled under the circumstances stated by her subsequent marriage with the appellee, are to be determined by the laws of this Stale, where she was domiciled at the time of her death, and where it is offered for probate. Pattersonv. Ransom, 55 Ind. Rep. 402. The testatrix being of full age, and a single woman of sound and disposing memory when the will was made, was capable of making it. Rev. Code, chap. 84, § 2, p. 508. And all the requirements of our law seem to be fully complied *Page 173 
with in the execution of it. Rev. Code, chap. 84, § 3, p. 508. It is not claimed that this will was ever revoked in any manner, unless it was revoked by the said marriage of the testatrix. The sole question, then, is did the marriage of the testatrix revoke the said will?
By the statutes in force in this State prior to the year 1873 married women were expressly excepted from those enabled to make wills as prescribed in it. Rev. Code, chap. 84, § 2, p. 508. But by the act of April 9, 1873, a married woman was enabled to make a will with the written consent of her husband. Rev. Code, p. 479; and by the act of March 17, 1875 (nearly three years prior to this marriage), the above restriction as to the consent of the husband was abolished, and a married woman was thereby enabled to make a will as fully as a man, or a single woman, subject only as to the curtesy of the husband in her real estate, if he survived her. Del. Laws, Vol. 15, p. 289; and by these acts a married woman was given during the coverture, as full control of her property as a man.
If the marriage of the testatrix revoked her will, it must be by force of some statute of this State, or some rule of the common law in force here. Chap. 84, § 10 of the Rev. Code, p. 510, enumerates the only cases of express revocation of wills recognized by our law, and concludes as follows: "But this clause shall not preclude nor extend to an implied revocation." And the following are the only cases of implied revocation created by our statute law; a will made by a person having no issue at the time, shall, if he leaves a child, be revoked. Rev. Code of 1874, p. 510, § 11; and a child born after the making of the will for whom no provision is made in it, or otherwise, shall take the same portion of the parent's estate such child would have taken had the parent died intestate, but this was only a revocation pro tanto
posthumous children in the mother's womb to be treated, if born alive, as within the foregoing provision, and take in like manner; and the widow of a husband who shall before his marriage with her, have made his will without making provision for her in it, or otherwise, shall have the same portion of his real and personal estate, she would have taken had he died intestate, *Page 174 
but this also only revokes the will pro tanto. Ibid.
p. 513, § 23. It thus appears that by the statute neither marriage nor birth of issue alone revoke a will in toto, but only the subsequent birth of issue when there was no issue born at the time of the making of the will, and there was no provision made in the will for such after-born issue.
The rule of the common law was that the marriage of a man after the making of his will, would not revoke it, but the marriage of a woman after the making of her will would revoke it; and in regard to a man the rule of the common law further was that when a man without a child marries and afterwards has a child, these two events together operate a revocation of his will, but not one of them only. Marston v. Roe, 35 E.C.L., 457. And by the common law the marriage of a woman after the making of her will operates as a revocation of it, for if she died before her husband it can have no force or effect, the making being only the inception of it, as it is ambulatory and can have no operation or effect during her lifetime, even if she had remained unmarried until her death; but if she survives her husband, the will is revived and takes effect at her death as if she never had been married. 35 E.C.L., 457; 6 Green. Cruise, 92; 2 Bro. Ch. Ca., 534, 544. And the reason why the will of a feme sole is revoked by her marriage, is because by her marriage and during the continuance of it, she ceases by the rule of the common law to have the right and power to control her property, or to make, alter or amend any will in regard to it. Doe v. Staple, 2 T.R., 695, 697.
If then the rule of the common law which made marriage a revocation of the will of a woman, and not a revocation of the will of a man, was founded only on the reason that she by her marriage voluntarily lost during her coverture all control of her property, all power to dispose of it, all power to make a will, and all power to alter one made before her marriage, so that its ambulatory character was thus lost, while he by his marriage retained all these powers substantially unimpaired, then there could be no ground to claim the existence and application of the rule to the destruction of the will of the woman after she has been *Page 175 
endowed by our statute with all these powers as fully as a man. Ubicadem ratio, ibi idem jus. (Where the reason is the same, there the law is the same). Co. Lit. 10a, 191a. Cenate ratione legis cessat ipsalex. For reason is the soul of the common law, and the reason of the law ceasing, the law ceases itself. Col Lit. 70b., 7 Rep., 69.
In several of the States it is provided by statute that the marriage of a feme sole shall be a revocation of her will. Such is the case in Pennsylvania, Indiana, Missouri and Arkansas; but in Ohio it is enacted that her marriage shall not revoke her will. In the following cases it was held that the marriage of a feme sole did not revoke her will.In re Fuller, 79 Ill., 99; Morton v. Onion, 45 Ver., 145. On the contrary there were other States in which they had a statute expressly making marriage after the making of the will a revocation of it, except in Rhode Island, cases in which was held under the statute of that State that it was presumptive evidence merely of revocation which might be rebutted by parol proof to the contrary.
As to the common law rule of construction touching the prospective or the restorative operation and effect of a statute, it could have no application whatever to the question involved in this case, for the simple reason that the common law which had before disabled a married woman to make a will, was afterwards wholly abrogated and annulled in this State by the statute, and before the will in question went into effect on the death of the testatrix, and at which time the common law rule referred to had ceased to exist or to have any effect.
Cummins (G.B. Rodney with him) for respondent. The recent statutes referred to of this State are in derogation of the common law rule on the subject, and should therefore be construed strictly. Dwar. on Stat., 695; 1 Kent's Com., 464. Among the various modes in which wills may be revoked is that of revocation by implication of law, and which is expressly recognized by our statutes, and was well settled as a principle of the common law adopted from the civil law by the courts in England at an early period, and is to this effect; that while marriage *Page 176 
and the birth of issue after the making of it is required to revoke a will by implication when made by a man, marriage itself merely after the making of it is sufficient to revoke it when it is made by a woman, and very good and strong reason was assigned for the distinction in the first case ruled upon the subject, which in substance was that by the marriage she became subject to the will of her husband and lost the power over which she before possessed, and which consequently destroyed from that time the ambulatory character of it during the residue of her life, which was contrary to the inherent and essential nature of every will. Forse and Hembling's Case, 4 Rep., 60; 1 Jarm. on Wills, 106; Lovelass on Wills, 367; Roberts on Wills, 151; Doe dem. Lancashire v.
Lancashire, 5 T.R., 58; Church v. Crocker, 3 Mass., 17; Shep. Touch., 452; 25 Law Lib., 56; Tyler v. Tyler, 19 Ill., 151; Dupreev. Dupree, 45 Geo., 415; Perkins v. Perkins, 62 Barb., 531; Loomisv. Loomis, 51 Barb., 257; Frensen's Will, 26 Pa., 202; Phaup v.
Wooldridge, 14 Grat., 332; De Vries v. Conklin, 22 Mich., 258; Millerv. Phillips, 9 R.I., 141; In re Fuller, 79 Ill., 107; Morton v.
Onion, 45 Ver., 145.
When the will in this case was made in the year of 1874 our statute of 1863 was in force; the provisions of it, however, have no bearing whatever upon the question here presented, but does our subsequent statute of 1875, passed after the will was made, apply to and include it within the purview of its provisions, according to the true and proper construction of them, and the manifest design and object of that statute? There is nothing in the terms of it that indicate in the slightest degree that it was intended to have any retrospective or retroactive effect or operation whatever, or was to apply to all former wills whenever made even by women then married however long that might have been prior to the passage of the statute, as well as to those which should be made by married women after the passage of it. It is simply and strictly an enabling act in its nature and character, and the necessary scope, purpose and province of such an act is prospective purely to enable persons to do and perform thereafter the matters and things provided for and authorized by it, but not to do or perform what had already been done before *Page 177 
the passage of it, for that is to be done by ratifying, not by an enabling act, and unless an enabling statute has some provision to ratify what has been done before the enactment of it no reasonable or proper construction of it can possibly give to it that operation or effect. The words of the statute are that any married woman of the age of twenty-one years and upwards may dispose of her property both real and personal by will, but this will was not made by a married woman, but by an unmarried woman who did not become a married woman until some four years after the will was made, and which was made by her while an unmarried woman before the statute was enacted. This, therefore, is clearly the case of a will not within the words of the statute, and which is just as clearly not within the true meaning and import of it, even if we go so far as to suppose that it was intended to have any retroactive operation and includes a will made by a married woman before the passage of it. And just here on this particular point as to the meaning and intention and operation of this provision of the statute, the rule of construction before referred to applies with peculiar and conclusive force, that being in derogation of the common law the statute must receive, not a liberal, but a strict construction. 2 Bro. Ch., 416; 62 Barb., 531; 1 Kent's Com., 464; Jones v. Wootten, 1 Harr., 77. It is doubtful whether this rule of construction was ever adopted in Vermont or Illinois, but here it has been recognized from the earliest period of our courts.
Spruance. There is no question in this case as to the construction of the statute, but the question is as to the effect of it on the common law rule referred to, we having no other statute in parimateria, as in the case cited on the other side from the New York Reports, 62 Barb.,531. Statutes are to be construed with reference to the common law, and in general they are not to be intended to make innovations in it further than the purpose and phraseology of the statute seem to require. But in this case the provision of the statute in question is as plain and explicit as it is concise and general in its terms, and unequivocally annuls in this State the pre-existing principle of the common *Page 178 
law which in general denied to married women the power to make a will, by expressly enabling married women of the age of twenty-one years and upwards to dispose of their property, both real and personal by will. And inasmuch as it is an enabling statute, and was made for the benefit of married women, and should be construed liberally to effect the beneficial object of it; and which is a recognized rule of legal construction generally applicable to such statutes. The only cases which have arisen in this country as to the effect of such a statute as this upon the common rule in question, hold that in abrogating the reason for it they have abrogated the rule itself. 45 Ver., 145; 79 Ill., 99; whilst all the cases cited on the other side were in States where there was an express statute making marriage a revocation of the will, except in the Rhode Island cases, in which it was held under the statute of that State that it was presumptive evidence of revocation which might be rebutted by parol testimony.
The rule of construction as to the retroactive effect and operation of a statute could have no application whatever to this case, for the simple reason that the principle of the common law which had before generally disabled married women to make wills in this State, was afterwards abolished by this statute, and before the instrument in question became the will of the maker of it upon her death. The court would find that the cases before cited by him from 45 Ver. and 79 Ill. in regard to this objection, are directly in point and against the principle contended for on the other side. But had the marriage in this case taken place before the passage of the statute in question he would not have thought of contending that the will was not revoked by it; on the contrary, he would in that case have admitted that the will was revoked by the marriage under the principle of the common law.
This case is before this court on an appeal from the order or decree of the register of wills, refusing to admit to probate the paper writing purporting to be the last will and testament of Martha Smith, dated the 21st of March, 1874, who, subsequently *Page 179 
to the execution thereof, and on the 27th day of February, 1878, intermarried with and became the wife of the Rev. John B. Clemson and died on the 14th day of August in the same year, without issue, and without revoking the said will made by her while a feme sole. The executors named in the will after the death of Mrs. Clemson, produced it before the Register of New Castle County and insisted on its being admitted to probate. Objections were interposed in behalf of Dr. Clemson, the surviving husband, on the ground that the will having been made and executed by Martha Smith, a feme sole, was revoked by her subsequent marriage.
To this objection the propounders of the will say that although it is true, that by the common law the will would have been revoked by the marriage, our statutes save it from the operation of the common law rule. The admission by the proponents of the will, that it would have been revoked by the marriage but for our statutes, narrows the case down to that question. We are, therefore, now to consider whether either the act of 1873 or that of 1875 saves and takes out of the operation of the common law rule this paper writing purporting to be the last will and testament of Martha Smith not Martha Clemson which she was at the time of her death, and when her will could only become a valid one if at all. This paper was executed on the 21st day of March, 1874. That Miss Martha Smith had an undoubted right to make a will when she made the one in question is not and cannot be denied; nor is it denied that her will was revoked by her subsequent marriage with Dr. Clemson, unless its validity was preserved by the statute of 1873 or that of 1875. The former declares that a married woman may
with the written consent of her husband given under his hand and seal, in the presence of two witnesses, dispose of her property by will. The paper writing purporting to be the last will and testament of Mrs. Clemson offered for probate and to be set up as such was not, of course, made under the provisions of the statute of 1873, for it was made and executed by Martha Smith, a feme sole, and that statute could not take it out of the common law rule and make the will a valid one, it would not have been such a will as *Page 180 
could have been set up and established if the testatrix had been married at the time of its execution, not having the consent of the husband and the formalities required by the statute.
But the propounder of this will alleges that the statute of 1875, passed after the date and execution of this will, authorizes married women to dispose of their property by will without the consent of their husbands, which is true; that statute does thus enable married women
to make dispositions of their property by will, but I do not suppose that the legislature intended to apply the provisions of the act to wills that had been made and executed by unmarried women before the passage of the statute, nor have I been able by the aid of any authority or by the force of any argument or mode of reasoning to bring my mind to the conclusion that this statute has the effect of resuscitating the revoked will of Martha Smith, and restoring its ambulatory character, and finally, on her death to make it a valid will of a married woman as she was at the time of her death, being the wife of Dr. Clemson, the contestant. Such a conclusion could only be arrived at, if at all, by giving the statute a retrospective operation where it was evidently designed to be a prospective one; there is no feature to be found in the act itself from which an inference can be drawn that it was intended to be retrospective, but on the contrary, it is apparent, that the legislature considered it a prospective act, for its language is expressive and I think conclusive as to intention and is not susceptible of any other construction.
To give to an act or statute a retrospective operation or action would be contrary to well-settled principles of law applicable to the construction of statutes, unless it be plainly and unmistakably so provided by the statute. This principle has been recognized by our own court and very clearly so in the case of Jones v. Wootten, 1 Harrington, 77, in which the opinion of the court was delivered by Judge Black and concurred in by Chief Justice Thomas Clayton. It is there said the court ought not to give to a law a retrospective operation or action if it be susceptible of any other.
The power that makes, is not the power to construe a law. *Page 181 
The legislature may declare what the law shall be, but not what it is or what it has been. That power belongs to the judicial department alone. This proposition is very clear and not only has the sanction of our own courts, but it has been so held by the Supreme Court of the United States.
Would not such a disposition of property by a feme sole on the eve of marriage, without the knowledge of her intended husband be a fraud upon his marital rights?
It has been held by the courts of this State that in the case of a ward settling with her guardian, who was her father, on the eve of her marriage, without the knowledge of him to whom she was afterward married, discharging her guardian from a large portion of his indebtedness to her, was a fraud upon the husband's marital rights, and therefore void, and the settlement treated as nullity. I see no material difference between that case and the one now before this court.
It is the opinion of the court, that the order and decree of the register, refusing to admit the said paper writing, purporting to be the last will and testament of Martha Clemson, was correct, and it is therefore ordered and decreed by this court, that the order and decree of the register be and it is affirmed.