ABSALOM VANDEVEER V. DANIEL HIGGINS ET AL.

FILED DECEMBER 6, 1899.   No. 9,050.

1. **Will: MARRIED WOMEN: ESTATE BY CURTESY.** Whether the devise of her separate real estate by a married woman will exclude the husband's estate by curtesy, not decided, because not directly involved.

2. ———: REVOCATION BY MARRIAGE. A will executed by a single woman is revoked by her subsequent marriage, at least to the extent it would operate to exclude her husband from his right as tenant by curtesy in any lands of which she dies seized in her own right of an estate of inheritance.

ERROR from the district court of Nemaha county. Tried below before LETTON, J.   *Reversed.*

*George W. Cornell,* for plaintiff in error.

*W. H. Kelligar, contra:*

A wife may, if she chooses, dispose of her separate property by deed or will, and thereby defeat curtesy, and the husband takes curtesy in that property only of which the wife died seized and intestate. See *Hatfield v. Sneden*, 54 N. Y., 280; *Ransom v. Nichols*, 22 N. Y., 110; *Porch v. Fries*, 18 N. J. Eq., 204; *Silsby v. Bullock*, 10 Allen [Mass.], 94; *Cole v. Van Riper*, 44 Ill., 58; *Stewart v. Ross*, 50 Miss., 776; *Bagley v. Fletcher*, 44 Ark., 153; *Milwee v. Milwee*, 44 Ark., 112; *Roberts v. Wilcoxon*, 36 Ark., 355; *Mason v.*

*Johnson*, 47 Md., 347; *Tilden v. Barker*, 40 O. St., 418; *Breeding v. Davis*, 77 Va., 639; *Neelly v. Lancaster*, 47 Ark., 175.

References as to revocation of will by changes in circumstances: *In re Ward*, 35 N. W. Rep. [Wis.], 731; *Noyes v. Southworth*, 20 N. W. Rep. [Mich.], 891; *In re Tuller*, 22 Am. Rep. [Ill.], 164; *Fellows v. Allen*, 49 Am. Rep. [N. H.], 328; *Negus v. Negus*, 26 Am. Rep. [Ia.], 157.

HARRISON, C. J.

The facts in which the matters in litigation in this case originated are undisputed. It appears that Eliza M. Kimberly, a widow, the owner of some real estate to which she had title in fee, made her will, by which she devised to certain of defendants in error the lands. She subsequently intermarried with the plaintiff in error, and some time afterward died. After her death the will was presented to the county court of Nemaha county, and, in the due course of regular procedure in such matters, was admitted to probate. The plaintiff in error, by what is designated a petition filed in the county court, in which certain of the facts were stated, asserted his claim to the real estate as tenant by curtesy. Answers were filed by the adverse parties, to which there were replies for the plaintiff. A trial in the county court resulted in the defeat of the plaintiff, who appealed to the district court, where judgment was rendered against him on the pleadings. The will involved in controversy was of date November 6, 1893. The marriage of plaintiff and Eliza M. Kimberly occurred November 13, 1894, and her death was on February 6, 1895.

The two questions raised and argued are, the main one, Did the marriage of Eliza M. Kimberly to plaintiff revoke her prior will? Another, on the answer to which it is contended the settlement of the first necessarily depends or hinges, Can a married woman, by devise of her separate real estate, defeat the husband's rights to take at her death, as tenant by curtesy? It is argued that if

the will of a married woman, by which there is a devise to a person other than her husband, of real estate of which the wife is seized in her own right, will exclude the husband as tenant by curtesy, the reason for the rule by which the marriage would have revoked a will of the woman, made before that event, by which real estate was devised, ceases; for if she could, after marriage, make a will with the same effect as before, no reason exists for a revocation, by law, of the prior will. The questions must be solved, probably mainly, by an application of our statutory provisions on the subject involved, and it may be best to review, to some extent, the course and history of legislation which has culminated in the present statutory provisions.

In 1855 it was of the enactments that any person of full age and sound mind might by will dispose of all of his property, except sufficient to pay his debts, and the allowance as a homestead, or otherwise, given by law to his wife and family; the revocation to be by cancellation, actual destruction with intention to revoke or by subsequent will. See Session Laws, 1855, p. 63. In act approved January 26, 1856, it was stated all persons of full age, except idiots and persons of unsound mind, may by will dispose of all their property. The marriage of a testator after the will made and issue born either before or after his death, if his wife were living at his death, revoked the will, unless the issue was provided for by some settlement or in the will. A will of an unmarried woman was revoked by her subsequent marriage. See Session Laws, 1856, p. 93. In 1860 it was enacted that a married woman might by will dispose of any property to which she was entitled in her own right, and alter or revoke the same in like manner that a person under no disability might, provided, to be valid, the will or any alteration or revocation of it must have the consent of the husband in writing annexed to it executed with the same formalities as the will. There was also a general provision in regard to revocation of wills, which was as follows:

"No will, nor any part thereof, shall be revoked, unless by burning, tearing, canceling, or obliterating the same, with the intention of revoking it, by the testator, or by some person in his presence and by his direction; or by some other will or codicil in writing, executed as prescribed in this chapter; or by some other writing signed, attested, and subscribed in the manner provided in this chapter, for the execution of a will; excepting only that nothing contained in this section shall prevent the revocation implied by law from subsequent changes in the condition or circumstances of the testator." This general provision has been continually in force to, and inclusive of, the present time. See Session Laws, 1860, p. 78, ch. 5, sec. 10. The portion of the statute in regard to the will of a married woman to which we have just referred was so amended in 1881 that no consent of the husband was necessary to either the will or its voluntary revocation. See Session Laws, 1881, p. 233. As then amended, the section has been continued and is now in force. In an enactment on the subject of real estate and its alienation, approved January 26, 1856, there appeared a section, 50, which was as follows: "Any real estate belonging to a married woman may be managed, controlled, leased, devised, or conveyed by her by deed or by will in the same manner and with like effect as if she were *sole*." See Session Laws, 1856, p. 88, ch. 31, sec. 50; Session Laws, 1864, p. 67, ch. 12, sec. 48. This, with no change except the use of the word "single" instead of "*sole*," has been and is now in force. See Revised Statutes, 1866, p. 290, ch. 43, sec. 47; General Statutes, 1873, p. 880, ch. 61, sec. 42. In 1855 it was enacted, in regard to the disposition of real estate of decedents, that the one-third of all real estate in which a husband at any time, during the existence of the marriage, had a legal or equitable interest, not sold on execution or judicial sale, and to which the wife had not relinquished her rights, should be set apart to her after the death of her husband, if she survived him, to be so set off as to include a home and homestead;

and in another section this appears: "All the provisions hereinbefore made in relation to the widow of a deceased husband shall be applicable to the husband of a deceased wife. Each is entitled to the same rights of dower in the estate of the other, and like interest shall in the same manner descend to their respective heirs. The estate by curtesy is hereby abolished." See Session Laws, 1855, p. 75, sec. 185. The following was approved January 26, 1856: "When any man and his wife shall be seized in her right of any estate of inheritance in lands, the husband shall, on the death of his wife, hold the lands for his life, as tenant thereof, by the curtesy provided." See Session Laws, 1856, p. 133, ch. 44, sec. 31. In 1887 this was so amended as to read: "When any married woman seized in her own right of any estate of inheritance in lands shall die, leaving no issue, the land shall descend to her surviving husband during his natural lifetime as tenant by curtesy." See Session Laws, 1887, p. 383, ch. 34, sec. 29. It has been since and is now the same. In 1871 (Session Laws, 1871, p. 68) was passed the act relating to the rights of married women, by which they were given the right to bargain, sell, convey, control and manage all the property they had at time of the marriage and which they acquired thereafter by descent, devise or bequest, or the gift of any person except the husband, and it was to remain their sole and separate property. This, with some amendments which do not materially affect the main purpose, is now the law. The estate of a husband by curtesy was, in an early day, abolished. See Session Laws, 1855, *supra*. Then by act approved January 26, 1856, an estate by curtesy was created. See Session Laws, 1856, *supra*.

The estate is then a statutory one. The other matters, of the execution of a will by a married woman and its revocation, and the revocation of the will of a woman made before marriage, by the latter event, are also subjects of statutory provisions. As we view the matter before us, it may be conceded that a married woman may

make a will, and it will, with like effect as if she was at the time single, pass at her death the whole estate and cut off the husband's rights by curtesy which would otherwise accrue. We do not decide this, however, as it is not directly involved. In the decision of the case of *In re Tuller* (see opinion in 79 Ill., 99, 22 Am. Rep., 164) it was stated: "It is the old and well settled rule of the common law, that the will of a *feme sole* is revoked by her subsequent marriage, and it is contended that, under this rule, the will was revoked. The reason of the rule was that a will is, in its nature, ambulatory during the testator's life, and can be revoked at his pleasure. But the marriage destroys the ambulatory nature of the will and leaves it no longer subject to the wife's control, and that it is against the nature of a will to be absolute during the testator's life. It is, therefore, revoked, in judgment of law, by such marriage. See 4 Kent, Commentaries, 527; 2 Greenleaf, Evidence, 684. That reason does not exist under our present statute of 1872, which gives to every female of the age of eighteen years the power to devise her property by will or testament." In *Baacke v. Baacke*, 50 Nebr., 18, some of the cases were cited which countenanced the doctrine just quoted, and it was held: "The common law doctrine, that the revocation of a will may be implied from subsequent changes in the condition or circumstances of the testator, obtains in this state, in so far as it has not been modified by statute."

It but remains for us now to determine whether or not the will here in question was, by the subsequent marriage of the testator, revoked—at least to the extent, by its terms and effect, it would exclude the husband's estate by curtesy; and it seems that the query mainly is, what was the intention of the legislature in its enactments on the subject of revocation of wills. It will be borne in mind, as we have hereinbefore shown, there was a specific provision that marriage subsequent to the making of a will by a woman worked a revocation, and there was also a statement of the changes of condition and cir-

cumstances which revoked a prior will of the man, of which marriage in connection with the occurrence of another event was mentioned; and further, that a subsequent legislature enacted the general rule in lieu of the specific one, and this general provision has been continued throughout the legislation by which all the restrictions which existed upon the power of a married woman to convey and dispose of her separate property have been removed. The only difference in the specific rules in regard to the revocation of wills, to which we have directed attention, and the general one is that the former more clearly expressed the intention than the latter. The first were expressed, the second implied. From a review which we have given a somewhat wide range of the legislation directly or indirectly affecting the subject-matter of the litigation, we are convinced that the intention of the lawmakers was to continue in force the rule as generally understood, i. e., that changes of conditions and circumstances included that of marriage. It follows that the marriage of the testatrix revoked her prior will to the extent it would have excluded her husband from an estate by curtesy in the real estate of which she died seized, and the judgment of the district court is reversed, and the cause remanded for further proceedings in accordance with the views herein expressed.

REVERSED AND REMANDED.