WILLIAM CORWIN JOHNS *et al.*

*v.*

JANE M. JOHNS.

*Opinion filed April 21, 1898.*

1. TRUSTS—*court should carry out donor's plans in dealing with trust.* In dealing with a trust the court should carry out the donor's purposes and plans, unless the preservation of the subject matter of the trust, or other like necessity, demands interference with his will and intention.

2. SAME—*when equity is not warranted in breaking trust.* A trust created for the express purpose of devoting the income from the land to certain persons, and of preserving the land intact during the continuance of the trust and vesting the title thereto in persons other than those entitled to the income, should not be broken into by a court of equity to change the trust property from real to personal, merely to increase the income.

3. SAME—*fact that cestuis que trustent will be benefited does not warrant breaking trust.* The fact that the interests of parties entitled to the income from trust property would be best subserved by breaking in upon the trust and disposing of the subject matter thereof in violation of the donor's express intention, does not warrant such action by a court of equity when not necessary to preserve the trust estate.

WRIT OF ERROR to the Circuit Court of Macon county; the Hon. EDWARD P. VAIL, Judge, presiding.

On the 18th day of June, 1860, one William Martin, since deceased, conveyed to one Harvey C. Johns the south-east quarter of section 14, township 16, north of range 2, east of the third principal meridian, in Macon county, Illinois, in trust. The deed provides, that whereas, the said party of the first part is desirous of providing a home for his daughter, Jane, wife of said Harvey C. Johns, during her natural life, and for the support and maintenance of said Jane and the education of William Corwin Johns, Fannie Johns, Helen Johns and Sheridan Johns, children of said Jane and Harvey C. Johns, and the support, maintenance and education of such other child or children as may be thereafter born

to Jane Johns by her husband, Harvey C. Johns, and is desirous of disposing of the real estate described for the uses and purposes aforesaid and for other uses and purposes in this indenture expressed, to have the said property in trust for the following purposes: To receive the rents, issues, profits and proceeds annually arising out of said estate and premises, and after paying all taxes and assessments of every nature and description, proper charges on the same, and after reserving a reasonable compensation to himself for the faithful performance of the duties herein expressed, to appropriate the balance of the rents, issues and profits in the manner following: To the support and maintenance of said Jane Johns during her lifetime, and to the support and education of William C. Johns, Fannie Johns, Helen Johns, Sheridan Johns and such other child or children, if any there be, that may be born to said Jane Johns by her husband, Harvey C. Johns; and after amply providing for the uses and purposes aforesaid, the residue, if any, shall be expended in improving the real estate and premises aforesaid in such manner as shall be deemed most beneficial to the parties interested therein, by said party of the second part; but no debts shall be incurred for the improvement of said real estate for which said real estate, or the proceeds arising therefrom, is to be chargeable. Said real estate is at all times to be free and unencumbered, and the proceeds annually arising therefrom are to be appropriated to the uses hereinbefore specified, in each and every year during the lifetime of said Jane Johns and until the youngest child of said Harvey C. Johns and Jane Johns hereinbefore named or hereafter to be born, shall attain the age of twenty-one years. Said Harvey C. Johns, during the continuance of the trust herein reposed in him, is to have the privilege of occupying said premises and real estate, but during the time of said occupancy the proceeds arising therefrom are to be disposed of as hereinbefore designated; and after the death of said Jane

Johns, wife of said Harvey C. Johns, and after the youngest of the children of said Jane and Harvey C. Johns hereinbefore named or hereafter to be born shall arrive at the age of twenty-one years, then said real estate and premises are to be divided equally among such children of said Harvey C. Johns and Jane Johns; and in case of the death of all or any of the said children leaving issue, then the descendant or descendants of such deceased child or children shall receive the share to which their parents would be entitled, if living. And it is further provided, that if none of the children now living or hereafter to be born of said Harvey C. Johns and Jane Johns shall attain the age of twenty-one years, or if all said children shall die without leaving issue, and after the death of said Jane Johns, then said real estate shall vest in said Harvey C. Johns, if he then be living, for and during the term of his natural life, and upon the death of said Harvey C. Johns such real estate, and all the premises herein granted, shall revert to and be re-invested in said party of the first part, his heirs or legal representatives. And it is further provided that if said Harvey C. Johns shall depart this life previous to the complete fulfillment of the trusts reposed in him, then the judge of the Macon county circuit court, or if there be no such court at that time, then the court having the highest civil jurisdiction in said county of Macon, will appoint a trustee for the faithful performance of the matters and duties herein designated, and will supervise the acts and doings in the premises of the trustee so appointed.

After the execution of this deed, to-wit, in December, 1865, another child, a daughter, Laura, was born to said Jane M. and Harvey C. Johns. Helen intermarried with one Charles B. Moore and Fannie intermarried with one R. J. Sedgwick, from whom she was subsequently divorced.

On the 12th day of September, 1895, the said Jane M. Johns filed in the circuit court of Macon county a bill in chancery, to which her said husband, the trustee named

in the said deed, her children named therein, Charles B. Moore, husband of Helen, and the said Laura, were made parties defendant, the prayer thereof being: "That on a final hearing in this cause the court adjudge and decree that the lands described in said trust deed, or so much thereof as may be necessary to provide a fund the income of which shall be sufficient for the support and maintenance of oratrix and such of her children as require the same, to be sold and converted into money, reserving, however, the house and about ten acres as a residence; that the fund obtained from said sale be, under the order of this court, safely invested, so as to bring an income as large as possible, consistent with the absolute safety and security of the principal sum so invested; that all investments be made under the direction and subject to the approval of said court, so as to guard all parties interested in the ultimate distribution of said property against all dangers of loss arising from the conversion of said real estate into money, as herein prayed. And oratrix prays that the income arising from the investment of the proceeds of the sale or sales hereinbefore referred to, be applied, under the order of this court, during the lifetime of oratrix, in such a way as to insure to her and her children, so far as the same may be necessary, the full and ample support which her father intended to provide for her and them by the terms of said trust deed, after paying all taxes and necessary expenses on such parts of said property as may not be sold, in pursuance of the prayer of this bill. Oratrix further prays, that in order to create a fund out of which the costs of repairs necessary for the preservation of the buildings on said trust property, described as aforesaid, may be paid, and also for the improvements necessary to be made on and in said house for the health and comfort of your oratrix and such of her family as shall reside with her therein, which improvements have been indicated in a preceding part of this bill of complaint, a portion of said

property described in 'Exhibit A' be sold, under proper orders and directions of this court. Oratrix further prays, that in order to accomplish the purpose for which this bill is filed, your honor will appoint the said Harvey C. Johns, or some other suitable person, trustee to execute the trust to be prescribed in the court's final decree in the premises; that such trustee be required or empowed to lay out such portions of said trust property as may be proper, in l'ots, blocks and additions to the city of Decatur, if it shall appear to the court by so doing the sale value of said lands may be substantially increased; and that such trustee be also empowered by the final decree herein to execute all deeds of conveyance for such portions of said trust property as may be sold by him, make all such plats and acknowledgments thereof as may be necessary to complete the execution of such trust; that such trustee be empowered to make sales of said trust property in part for money and in part on credit, all deferred payments to be secured by mortgage on the property sold. Oratrix further prays, that the court will retain jurisdiction over this cause for the purpose of supervising the complete execution of the decree to be rendered herein, and give to such trustee instructions from time to time, as he may require."

The issues made by the bill and the various answers thereto were submitted to the court for decision upon proofs presented by the respective parties, and a decree was entered, in substance as follows: The court finds all the material allegations of the bill of complaint, as therein stated, are true; that the value of the land is about $200,000; that such land is ordinary farming land, suited for pasturage purposes; that the gross annual income was, last year, only $1440 and the net income $640; recites the history of the city of Decatur and the building up of the city about the premises on the north, west and south sides, and that while the value has increased to $200,000 the income has not increased; that the income

from the land will remain wholly inadequate for the support and maintenance of complainant and Fannie Sedgwick and Laura Johns; that at the time of the filing of this bill Harvey C. Johns was, and is still, in bad health, and that the complainant and Harvey C. Johns require greater ease and comfort than can be obtained from the limited net income derivable from the trust property; that Harvey C. Johns has no property in his own name, and no means of support except that which is derived from the trust; that the necessities of complainant and her daughters, Fannie and Laura, and of Harvey C. Johns, require that the trust property created by the trust deed be broken in upon, and the trust instrument be so far modified as to allow sufficient of the trust property specified to be sold and the proceeds re-invested, to the end that a sufficient income may be obtained for the suitable support and maintenance of complainant and her daughters, Fannie and Laura, and for the maintenance and support of Harvey C. Johns and the future necessities of Helen; that the said trust deed should be so far modified as to permit a sale of so much of said trust estate as may be necessary to produce a fund sufficient for the repairs and improvements on the dwelling house and other buildings now on said trust property, and that the costs of such improvements should be paid out of the principal obtained by and through the sale of a portion of the trust estate; that the improvements for the preservation of the buildings will cost about $3000, and that such sum should be set out as part of the principal which may arise from the sale; that it will be for the benefit of all parties to have the land sold and the proceeds re-invested, and the income devoted to the purposes contemplated by the trust deed until the death of the complainant; that it is absolutely necessary for the repair of the buildings on the premises that $3000 should be expended, and that for the maintenance of complainant and the members of her family who live with her it is necessary that complainant

have an annual income of $3000, and that out of said income she should pay all expenses incident to the keeping and maintaining of the house as a home for herself; that Fannie and Laura should each have an income of $500 a year, to be paid to them out of the income derived from the investment of the proceeds of the sale. And it is therefore ordered, adjudged and decreed that the trust deed be modified so as to permit the sale by the trustee named in said instrument, and a co-trustee, of so much of the premises as may be necessary to produce the sum of $3000, to be expended in improvements on the dwelling house and appurtenances thereto and outbuildings, and to produce a further fund the annual income of which shall be sufficient to enable the trustees to pay complainant $3000 annually and Fannie and Laura each $500, and Helen Moore such amount as she may be allowed hereafter by this court for the purpose of the education of her children; and that Helen, at such future time as she may think necessary, be empowered to apply to this court in this case, or by any other proper proceeding, for an allowance out of the income of said trust estate sufficient to meet the suitable education of her children or other of her necessities, and in the event of such allowance being granted her hereafter, the trustees who shall execute this decree shall pay to her the amount of such allowance out of the income of said trust estate; that Albert Barnes be appointed trustee to act with Harvey C. Johns, and that Johns and Barnes be authorized and empowered to sell so much of said trust estate as may be necessary to produce the sums above mentioned, and out of the proceeds of the sales they shall make the improvements upon the house for heating appliances, for lighting the house, conducting the water mains of the city up to the house and conducting the water into a bath-room and such other places as may be required, the cost of the improvements not to exceed $3000 and to be paid out of the principal derived from the sale; that the trustees shall have such

compensation as shall be allowed, from time to time, by order of the court, and a reasonable attorneys' fee be paid, and the same is allowed, to Crea, Ewing & Walker for their services as solicitors in this case, the amount of such fee to be hereafter determined by this court, and the same, when so determined, together with the costs and expenses of this proceeding, to be paid by said trustees first out of the proceeds of the sale of portions of said trust property to be made by them; that the trustees reinvest the proceeds of the sale of real estate remaining after the payment of said sum of $3000 for improvements and the costs of this proceeding and solicitors' fees, at the highest rate of interest obtainable consistent with the safety of such fund, all loans to be secured by first mortgage on improved real estate; that out of the income arising from such investment said trustees shall pay to complainant the sum of $3000 annually and to Fannie and Laura each the sum of $500, said several sums to be paid to such persons in semi-annual or quarterly payments, if such persons shall respectively so desire, the payments to Fannie and Laura to cease on the death of complainant.

This is a writ of error prosecuted to bring the proceedings and decree before this court for review.

W. C. JOHNS, *pro se* and for plaintiff in error Sheridan W. Johns.

Mr. JUSTICE BOGGS delivered the opinion of the court:

The record in this case presents two questions: First, has a court of equity jurisdiction and power to break in upon this trust and order the real estate to be sold and converted into money; and second, if it has the power, is such a case presented as should move the court to exercise such jurisdiction and power.

The first question has received the attention of this court in the cases of *Curtiss* v. *Brown*, 29 Ill. 201, *Voris* v. *Sloan*, 68 id. 588, *Dodge* v. *Cole*, 97 id. 338, *Longwith* v. *Riggs*,

123 id. 258, *Hale* v. *Hale*, 146 id. 227, and *Gavin* v. *Curtin*, 171 id. 640, and on the authority of those cases it must be answered in the affirmative. It remains however to be determined whether such power should be exercised in this instance.

When the trust deed was executed the lands were devoted to purposes of agriculture and the grazing of animals. It is now equally well adapted to those purposes and is not shown to be less productive than when the trust was created. It has increased in salable value by reason of the growth of the city of Decatur and of its proximity to the extended limits of that city. If divided into city lots, the premises, or a portion of them, could be disposed of at such prices that the proceeds of such sale would create a fund which, if put at interest, would produce a much greater annual income than can be realized from the sales of the products of the land if farmed or by devoting it to the grazing of animals. The argument seems to be, the trust should be administered with the sole view of making it yield the greatest possible yearly income for the benefit of the defendant in error and her children, or, at least, that as the trust property would, if sold, produce a very large sum of money, their condition in life should be deemed by the courts to be that of persons possessing life interests in property of such great value, and they consequently entitled to live in a style and manner corresponding to such condition of life. Upon this theory defendant in error insists the dwelling house on the premises should be piped for water and supplied with fixtures for lighting it with electricity, and that a bay window be added, and such other modern improvements made as would convert it into a residence suitable to the condition of persons having a life estate in property of such great value as this land, and further, that they should be deemed entitled to an annual income sufficient to maintain a position in life commensurate to the money value of the trust estate. Evidence was pro-

duced with reference to the sum necessary to so improve
the dwelling house and to defray the expenses of so main-
taining a family, and on this basis the decree in question
was entered and the proposed sale of the lands, or a por-
tion of them, justified.    The position of the defendant in
error therefore is, that the fact that the best interests of
the *cestuis que trustent* would be subserved by selling the
lands amply justifies the court in breaking in upon the
trust and disposing of the subject matter thereof.

It is beyond controversy it was the intention of the
said William Martin, deceased, the donor of the trust,
that the tract of land which is the subject matter of the
trust should not be aliened during the continuation of
the trust, but that the title thereto should remain in the
said trustee,—that is, the land itself should be preserved
intact,—until all the purposes of the trust had been fully
fulfilled, and that when such purpose had been accom-
plished the possession of the identical land should pass
and the title thereto vest in accordance with his wishes,
as explicitly declared by the provisions of the trust deed.
The question then relates to the propriety of exercising
the power of the court to defeat the manifest desire and
intention of the donor, by ordering the tract of land, or
a portion thereof, disposed of contrary to his expressed
will and intention.    Undoubtedly it is the duty of the
court to observe the wish of the donor, and to aid in up-
holding the trust and causing it to be administered in
accordance with the will of him who created it.

Many of the adjudicated cases relied upon to support
the view that the court should break in upon the trust
here involved and dispose of the title to the subject mat-
ter thereof are cases where the trusts were created for
the purpose of devoting the subject matter of the trust
to the benefit of infants or lunatics, or persons under
other disabilities, during the continuance of such dis-
ability, and only because of the existence of the disabil-
ity.    Therefore the holdings in such decisions that the

172—31

best interest of the *cestui que trust* is a sufficient consid-
eration to warrant the court in changing the character
of the trust property from real to personal estate is not
sufficient, within itself, to warrant a decree ordering the
sale of real estate the title to which has been placed in
trust for the express purpose of preserving such title for
the use of persons other than those to be benefited by
the income arising from the land, as in this case.  The
donor in this case created the trust for the purpose of
devoting the income from the land to the use of certain
persons and of preserving the title to the land,—that is,
the land itself,—intact during the continuation of the
trust, and vesting such title, after the purposes of the
trust had been fully accomplished, in persons designated
by the donor to receive it.  The duty of the court in such
instance is to regard the express wish of the donor and
to lend its aid to the accomplishment of his desires, and
the best interest of those entitled to the annual income
of the subject matter of the trust is, it is believed, never
considered as a sufficient reason for breaking in upon
such a trust and disposing of the subject matter thereof
in violation of the intention and purpose of the donor.
In the late case of *Gavin* v. *Curtin, supra,* speaking with
relation to the circumstances which ought to authorize
courts to defeat the will of a donor in such instance, we
said:   "The exercise of that power can only be justified
by some exigency which makes the action of the court,
in a sense, indispensable to the preservation of the inter-
ests of the parties in the subject matter of the trust, or,
possibly, in case of some other necessity of the most ur-
gent character." And in *Voris* v. *Sloan, supra,* it was said
that it is only in cases of the most urgent necessity that
the terms of the trust will be changed.

    In the case of *Curtiss* v.*Brown, supra,*where the subject
was brought to the attention of this court, the circuit
court entered a decree ordering land which was the sub-
ject matter of a trust of this character to be sold upon

the ground, mainly, that the interest of the immediate beneficiary, who was entitled to the annual income from the land, would be best subserved by a sale of the land, and the decree was affirmed, and this case is relied upon by the defendant in error as authority to support the decree of the circuit court in the case at bar. An examination of that case will disclose that the decision should not be given such weight, but that, in fact, upon the contrary, the principles announced are in entire harmony with our holdings in the later cases hereinbefore cited. In *Curtiss* v. *Brown, supra*, the decree was rendered in 1852. Certain real estate which had been conveyed to Brown as trustee for Mrs. Curtiss, a *feme covert*, to hold during the lifetime of her husband free from his interference or control, was ordered to be sold while the husband was still living. The land was sold under the decree and the proceeds of the sale paid to Mrs. Curtiss. Some years after, Mrs. Curtiss prosecuted a writ of error to reverse the decree. The court held that the circuit court had jurisdiction to break in on the trust and power to sell the land, but with reference to the propriety of exercising the power, in the course of the opinion it was said: "If the record had been brought before us before the decree had been executed and while a reversal of it would have afforded any practical remedy to the beneficiary by preserving the estate from being wasted, according to her own request, we should, no doubt, have reversed it." And in the further course of the opinion it was said: "And we repeat, were the decree unexecuted we should not hesitate to reverse it at once." But the decree was affirmed upon the ground that it was inequitable to reverse it, and thereby cloud the title of the purchaser under it, after it had been executed and after Mrs. Curtiss had obtained, at her own request, through the medium of the decree, the proceeds from the sale of the land.

In *Dodge* v. *Cole, supra*, relied upon by the defendant in error, the question presented was as to the propriety of

decreeing that certain lands which belonged to the insane ward of the conservator should be sold, for the reason the interests of the insane person would be conserved by disposing of the land and converting it into personal property and appropriating the proceeds to the support and maintenance of the insane person. There the title vested in the insane person, and hence the best interest of such insane person was of controlling importance, and no reason appeared why the interest of any person should be consulted.

In *Longwith* v. *Riggs, supra,* also relied upon by the defendant in error, the beneficiary was an imbecile daughter of the donor, and there was a gift over to other children of the donor. The trust was created by will, and the intention of the testator, as gathered by the court from the will, was to raise the trust for the protection and maintenance of the idiotic beneficiary, and that the title to the land was placed in a trustee, and not in the *cestui que trust,* only because the latter was incapable of managing her share of the estate. The view of the court therefore was, that the central idea of the testator was to place the share of the imbecile daughter in secure hands for her benefit, and that the direction of the testator as to the gift over was subordinate in his mind to the maintenance of the beneficiary, and for such reasons the court was moved to approve a decree of the circuit court which broke in upon the *corpus* of the trust fund for the purpose of paying physician's bill, funeral expenses, and other claims of like character incurred in the necessary support and maintenance of the *cestui que trust.*

The doctrine of these cases and that of *Dodge* v. *Cole* is, that a court of equity, in dealing with a trust created for the benefit of an insane person, an infant or one otherwise under some disability, and because of such disability, will exercise the power to convert the real estate into personal property or break in upon the *corpus* of the trust if the best interest of the beneficiary demands that

course.   But those cases are not to be understood as authority for the proposition that the court, in the case of a trust such as appears at bar, is justified in breaking in upon the trust and disposing of the subject matter against the will of the donor, on the ground the immediate beneficiaries will receive greater benefit by reason of the proposed change in the trust than would accrue to them if the trust is administered according to the will of the donor.   The trust in the case at bar was not made or created because any beneficiary was of unsound mind or under any disability, but in pursuance of a matured plan of the donor to which he devoted the use of the property.   True, certain of those intended to be benefited by the trust were minors at the time of its creation; but it is manifest the controlling purpose of the trust was not to preserve and secure the estate for the maintenance of the minors until they should reach the age of maturity, but the central idea was to preserve the estate itself until all the purposes of the trust had been subserved and then to devolve the title upon the said beneficiaries, should they be living.   The mere fact that a sale of the land might benefit the beneficiaries more than the compliance with the terms of the trust does not furnish a reason for a decree ordering the title of the land to be disposed of in opposition to the manifest wish of the donor.   The duty of the court in dealing with such a trust is to observe and carry out the purposes and plans of the donor, unless the preservation of the subject matter of the trust, or some other like necessity, demands interference with his will and intention.   The evidence does not disclose a condition of such urgency or necessity.   The decree is grounded solely upon the interest and convenience of the immediate beneficiaries.   This is not enough to justify a decree nullifying the expressed wish and purpose of the creator of such a trust as the one under consideration.

The decree is reversed and the cause remanded.

*Reversed and remanded.*