20    APPELLATE COURTS OF ILLINOIS.

Northern Trust Co. of Chicago v. Thompson, 245 Ill. App. 20.

---

## The Northern Trust Company of Chicago, Complainant and Appellees, v. John R. Thompson et al. Defendants. Wallace R. Condict, Appellant.

### Gen. No. 31,473.

1. TRUSTS—*trustee's discretion in permitting erection of new building on trust premises.* Under a trust indenture giving a trustee full power over certain realty and the 99-year lease thereon and discretion in improving the property in case the lease should be forfeited or upon its termination, the trustee has no discretionary power to consent to putting a new building on the ground by the lessee, in absence of forfeiture, or until the lease terminates.

2. TRUSTS—*right of lessee to erect new building on trust property in absence of casualty.* A clause in a lease which compels the lessee to repair or rebuild in case of loss or damage to the property from fire or otherwise does not permit the trustee, who holds the lease as part of his trust, to consent to the lessee tearing down the old building and erecting a new one without any fire or other casualty having occurred.

3. TRUSTS—*chancery power to modify.* If exigencies arise, unforeseen by the creator of a trust, which only modifications of the

CHICAGO—FIRST DISTRICT—JUNE, 1927.     21

Northern Trust Co. of Chicago v. Thompson, 245 Ill. App. 20.

trust can meet, chancery has power to modify the trust in such a way as to preserve the trust from destruction or to carry out the settler's main purpose.

4. TRUSTS—*limits on chancery power to prevent destruction of trust property*. To preserve a trust estate from destruction, it is not necessary that the court allow the trustee to consent to the lessee's rebuilding on the realty merely because the buildings thereon are old or because the new building would bring somewhat more rental to the trust, especially against beneficiaries' objections.

5. TRUSTS—*extent of right of court to grant power to trustee*. Under Cahill's St. ch. 22, ¶ 50, providing the courts of chancery may grant trustees certain powers, such courts have no greater powers than heretofore over trusts, as given them under the decisions of our Supreme Court.

6. TRUSTS—*statutory power over trust created before enactment of statute*. Cahill's St. ch. 22, ¶ 50, providing for certain powers of chancery in trust estate matters, should not be applied to the settlement of questions concerning a trust estate which came into being many years before the statute in its amended form was enacted.

7. ESTOPPEL—*effect of consent to interpretation of trust deed*. A trustee, in its suit to interpret a trust deed, cannot rely upon a defendant's preliminary consent to its interpretation of the trust deed, as an estoppel to defeat his later opposition, in view of its taking all the steps it would have taken if he had opposed from the start.

8. EQUITY—*cross-bill dismissed through dismissal of bill*. The Appellate Court's reversal of a chancellor's decree and remanding with directions to dismiss complainant's bill carries with it the dismissal, though without prejudice, of a defendant's cross-bill, even though the latter was not disposed of by the chancellor in his decree.

9. EQUITY—*cross-bill as pertinent to original bill*. A cross-bill must be confined to the subject matter of the original bill and introduce only such new facts as are necessary for the court to have, to decide the questions of the original suit so as to do full justice to all the parties in respect to that cause of action.

Appeal by defendants from the Circuit Court of Cook county; the Hon. IRA RYNER, Judge, presiding. Heard in the second division of this court for the first district at the October term, 1926. Reversed and remanded with directions. Opinion filed June 14, 1927. Rehearing denied June 28, 1927.

**Statement by the Court.** By this appeal Wallace R. Condict, one of the defendants and one of the beneficiaries under a trust indenture (dated July 7, 1892, and made by Caroline E. Haskell, a widow, with com-

plainant as trustee), seeks to reverse a decree of the circuit court of Cook county, entered April 30, 1926, wherein the court approved and confirmed a certain written agreement dated December 16, 1925, between complainant, as trustee, and John R. Thompson, another of the defendants. This agreement will hereinafter be referred to as the "compromise agreement." It is designated in the decree as the "supplemental or sub-lease." Lucy Smith, a defendant and also one of the beneficiaries, has assigned cross-errors, which are substantially the same as the errors assigned by Condict, and she and Condict have here filed a joint brief in support of their contentions. Separate answering briefs have been filed by complainant and Thompson, to which Lucy Smith and Condict have filed a reply brief, and the cause has orally been argued. Thompson, also, has assigned cross-errors, to the effect that the court erred in failing to find and decree that he has a good title to, and is the owner of, the leasehold estate and the building on the premises. The cause was tried in open court before the chancellor and considerable evidence, oral and documentary, was introduced.

In the bill, filed December 17, 1925, complainant alleges that on March 18, 1889, by written lease (copy attached) Frederick Haskell and Caroline E. Haskell, his wife, demised the premises for 99 years, commencing April 1, 1889, to Herman H. Kohlsaat and others, as lessees. The premises are L-shaped and partially surround but do not include other premises at the northwest corner of Dearborn and Madison Streets, Chicago (known as the "Field" property), and have two frontages—one facing east on Dearborn and the other facing south on Madison. Immediately west and adjoining is the so-called "Freer" property, facing south on Madison. All three properties are improved with separate buildings. Complainant further alleges that, by the terms of the lease, the lessees

agreed to pay as rent $30,000 per annum in quarterly instalments and all taxes and assessments, to keep the building insured and in good repair, and, upon termination of the lease by forfeiture or otherwise, to yield up to the lessors the premises and building, and further agreed that, "in case of loss or damage by fire *or otherwise* to the buildings, now upon said premises or that may hereafter be erected thereon, to rebuild or repair the same within twelve (12) months thereafter, equal in value or condition to the building or buildings so destroyed or damaged." There is no provision in the lease expressly granting to the lessees *the right to remove* the building upon the premises, or to rebuild it, except, possibly, the clause just mentioned as to loss or damage "by fire or otherwise," nor is there any provision authorizing the construction of one building covering said premises and any adjoining premises. Complainant further alleges that, on April 8, 1896, Mrs. Haskell (who had become the owner of the premises subject to the terms of the lease) demised by written lease to said lessees the "south ten inches" of a certain sublot in the block. It appears that said south ten inches were intended to be included in the original lease, but through error were not, and that by said other lease the same were demised for the term of the original lease and subject to all of its provisions and conditions. Complainant further alleges that Thompson, by virtue of certain mesne conveyances and assignments, has become the owner of said leasehold estates and of the building located upon the land; that the leases are in full force and effect, and that, under dates of July 7, 1892, and April 15, 1896, Mrs. Haskell delivered to complainant two trust indentures (copies attached to the bill) conveying the premises, and also, as lessor, assigning to complainant the leases. The purpose of the making of the instrument of April 15, 1896, was merely to include in the trust property said additional ten inches.

By the indenture of July 7, 1892, Mrs. Haskell (as party of the first part) conveyed to complainant (as party of the second part) the real estate described in the lease of March 18, 1889, excepting the building and improvements thereon, but including in the conveyance said lease, ''to have and to hold the same with all the privileges and appurtenances belonging thereto, to the party of the second part, its successors and assigns, to its and their own use forever, but upon the following *express trusts*,'' viz:

''First: To collect the rents of said property at the times and in the manner provided in the lease, and after deducting the reasonable charges and expenses of said party of the second part to pay over the same to said party of the first part or to her order as the same shall be paid in for and during her natural life; and after her death to pay over, divide and distribute the same as the same shall be paid in, in manner following, that is to say:

''One sixth (1/6) thereof to Louisa Condict of the village of Evanston, in the State of Illinois, sister of said party of the first part, for and during her natural life should she survive said party of the first part, and after her death, or after the death of said party of the first part should she survive said Louisa Condict, and up to the time of the final sale and distribution of the proceeds of said property as hereinafter provided, to the lawful heirs of the said Louisa Condict, *per stirpes.*

''One sixth (1/6) thereof to Lucy Smith of Boston, in the State of Massachusetts, sister of said party of the first part, etc.   *   *   *.

''Five Twenty-fourths (5/24) thereof to Jennie Porter, of Michigan City, in the State of Indiana, niece of said party of the first part, etc.   *   *   *.

''Seven One hundred and Twentieths (7/120) thereof to Carrie Jones of Chicago,   *   *   * niece of said party of the first part, etc.   *   *   *.''

(Then follow other clauses providing for the payment by complainant, as trustee, of various other frac-

tional portions of the net rents collected, to other persons named and described, or to their lawful heirs.)

"Second: At the expiration of twenty-one (21) years after the death of the last survivor of said party of the first part, said Louisa Condict, Wallace R. Condict, and Jessie Condict, children of said Louisa Condict, said Lucy Smith, L. W. Smith, Jr., and Lillian Smith, children of said Lucy Smith, said Jennie Porter, Louise H. Porter, Julia Porter and Jessie Porter, children of said Jennie Porter, and Edith Jones, daughter of said Carrie Jones, to grant, bargain, sell and convey the said real estate *and leasehold interest* for the best price the same will bring in cash, either at public or private sale, at the discretion of said party of the second part, and to make, execute, acknowledge and deliver all such conveyances thereof as may be necessary or proper to carry out and effectuate such sale,　*　*　*　and to divide and distribute the proceeds of such sale after deducting the reasonable charges and expenses of said party of the second part in manner following, that is to say:

"One-sixth (1/6) thereof among the lawful heirs of the said Louisa Condict, *per stirpes.*

"One-sixth (1/6) thereof among the lawful heirs of the said Lucy Smith, *per stirpes.*"

(Then follow other clauses providing for the payment out of said proceeds of sale of various other fractional portions to other named persons, or to their lawful heirs. And then follows a clause providing for payment of reasonable compensation to the trustee for its services, and for the repayment to it of all necessary outlays, including attorney's and solicitor's fees, etc. And then follow the clauses:)

"That, in the performance of the trusts hereunder, the Trustee shall be held only to fair and reasonable *diligence and discretion.*

"That if, for any reason the ninety-nine year lease above referred to should *become forfeited or at an end,* then and in that case the said Trustee shall have

and is hereby given full power to manage, improve, control, lease, protect and care for said trust estate and property, according to its best judgment and discretion in all things, but for the purposes and trusts hereinabove provided for.''

The bill further alleges that Mrs. Haskell died on April 21, 1900; that some of the named beneficiaries are still living and that the time for the sale and distribution of the trust estate has not yet arrived; that since July 7, 1892, complainant, as trustee, has been in charge of the premises, collecting the rent and, since the death of Mrs. Haskell, paying the same to the beneficiaries, or to the heirs of such of them as have died; that the building located upon the premises is a 6-story brick building with stone facing, erected about 35 years ago, is old and in bad repair, ''practically worthless'' and ''wholly inadequate'' to the uses in its locality, and not as well adapted thereto as would be a building of more modern and fireproof construction, and that ''it is to the best interests of said trust estate that said old and antiquated building should be removed and in its stead a modern structure erected''; that Thompson is also the lessee, under long-time ground leases, of the adjoining premises to the west (the Freer property) and of the adjoining premises to the south and east (the Field property), and desires to remove the building now on the premises (hereinafter called the Haskell premises) and to erect on *all three* properties ''a first class, modern, fireproof building, not less than 12 stories in height, and to so construct the same that, while occupying all of the several tracts of land, it may easily be converted into a single building,'' for use upon the Haskell premises, ''through the construction of proper partition walls between floors, and with foundations and columns located upon the respective lot lines,'' so that the building to be erected upon the Haskell premises ''shall be capable of use as a separate building without structural altera-

tions in the foundations and enclosing walls''; that, although in the leases in question there is no express provision authorizing the removal of the present building, or authorizing its use as a part of a building occupying the Haskell premises and the two adjacent premises (the Freer and Field properties), yet Thompson *claims* that, under the lease of March 18, 1889, *properly interpreted*, he has a right to remove the present building and to erect in its stead a building of greater height and value, which shall be connected with new structures or buildings upon the adjacent premises, all to be operated as a single building; that complainant ''is in doubt and has questioned the right of Thompson'' so to do without complainant's express consent, and is ''also in doubt as to *its right to consent* to a change in the terms of the leases whereby said terms shall be modified or enlarged''; and that, as the result of these divergent views and after negotiations, complainant in its capacity as trustee and Thompson, on December 16, 1925, executed an agreement, ''subject to the approval and confirmation of a court of competent chancery jurisdiction.'' (A copy of the agreement is attached to the bill, hereinafter referred to as the compromise agreement.)

This agreement contains numerous recitals including statements of the opposing contentions of the trustee and Thompson, and the statement that they ''desire to adjust their differences in an amicable manner and to their mutual advantage.'' Its more important provisions are in substance as follows:

Complainant, as trustee, agrees:

(1) That Thompson may demolish and remove the building upon the Haskell premises and appropriate the materials to his own use, upon condition that he procure to be delivered to the trustee an undertaking, binding him, his heirs, legal representatives and assigns, to erect and complete a building thereon, as

hereinafter described, free from mechanics' and other like liens.

(2) That the trustee will join with Thompson in executing a party wall agreement, providing for the sinking of caissons to bed rock or hard pan, standing one-half upon the Haskell premises and one-half upon the adjoining premises, and for the erection of steel structural members, placed one-half upon the Haskell premises and one-half upon the adjoining premises.

(3) That the building to be constructed upon the Haskell premises may be so constructed as to be used in conjunction with, or as a part of new construction upon, the premises to the west (Freer) and to the south and east (Field), provided that said building shall be so constructed that it can be equipped, without structural alterations, for use as a separate building.

(4) That Thompson, as lessee, or any subsequent lessee by assignment, may take down or destroy *any new building*, or any portion thereof, that may hereafter be erected upon the Haskell premises, for the purpose of replacing the same with another building, or portion thereof, upon certain named conditions, including *inter alia* a deposit of securities, as against mechanics' and other like liens.

And Thompson, in consideration of the foregoing, agrees:

(1) That, beginning on April 1, 1926, or upon the commencement of the removal of the building upon the Haskell premises if commenced before that date, Thompson will pay, for the balance of the term of the lease of March 18, 1889, rental at the rate of $35,000 per annum (an increase of $5,000 per annum) in quarterly instalments.

(2) That, at such time as he may elect, Thompson will remove the present building upon the Haskell premises and replace the same with a building or part of a building; that the new building shall not be less than 12 stories in height, and of first class, modern,

Northern Trust Co. of Chicago v. Thompson, 245 Ill. App. 20.

fireproof construction; and that, if constructed in conjunction with or as a part of new structures upon the adjoining premises, it shall be so constructed as to be capable of independent use as a separate unit without structural alterations, etc., provided that Thompson may alter, improve or enlarge the new building, but not in such way as to diminish the value thereof.

(3) That Thompson will maintain the new building *or any building which may be substituted therefor,* in good condition and repair, and will keep it insured for not less than 70% of its fair insurable value above the foundations.

(4) That Thompson will furnish the trustee with plans and specifications for the proposed new building, and of any structural alterations which may be proposed to be made, etc.

And it is mutually agreed:

That the original leases of March 18, 1889, and April 8, 1896, shall remain in full force and effect, *except as herein modified;* that the covenants contained in this agreement shall bind the successors, heirs and assigns of the respective parties; that any covenant herein contained to be performed on the part of Thompson may be performed by any *sub-lessee* of Thompson, with like effect as if performed by him; that "this agreement" is executed by the trustee in the exercise of every power and discretion vested in it under said deed from Mrs. Haskell (the trust indenture of July 7, 1892), but that the trustee is unwilling to warrant or represent the extent of its powers, etc., in that regard; that "this agreement" shall not become binding upon the trustee or the trust estate until the same shall have been confirmed and ratified by a court of competent chancery jurisdiction; and that the trustee agrees forthwith, by proper proceedings, to seek to obtain a decree authorizing and ratifying "this agreement," and empowering the trustee to bind the trust estate thereby, but that Thompson's

30     APPELLATE COURTS OF ILLINOIS.

Northern Trust Co. of Chicago v. Thompson, 245 Ill. App. 20.

covenant to pay the increased rental shall not become operative until the decree shall be entered.

The bill further alleges that complainant believes that it is for the best interests of the trust estate that "the proposed settlement of the difference or controversy between complainant and Thompson be made"; that it is a fair and equitable settlement and will result in substantial financial advantage to the trust estate and to the beneficiaries thereof; that, inasmuch as complainant is acting for the benefit of numerous beneficiaries who are widely scattered, and "as there is legal doubt as to complainant's right to act," it deems it expedient to apply to the court for the purpose of being advised respecting the final acceptance or rejection of the proposed settlement; that the present beneficiaries of the trust number upwards of 50; and that it is impracticable for it to ascertain the names, ages and relationships of the persons who will be heirs of the living beneficiaries in the event of their deaths. The bill then sets forth the names of the original beneficiaries (mentioned in the trust indenture) who are still living, and alleges that Louisa Condict has died, leaving her surviving as her only heirs-at-law her children, said Wallace R. Condict and Jessie Condict Lee, and that they have been receiving between them the share to which Louisa Condict would have been entitled had she lived. The bill contains other allegations regarding the deaths, etc. of others of the originally named beneficiaries, and further alleges that Catherine Condict Yates, wife of Lloyd D. Yates and daughter of said Wallace R. Condict, is the immediate prospective heir-at-law of the latter; that the immediate prospective heirs-at-law of Jessie Condict Lee are John H. S. Lee, her husband, Elizabeth C. Lee, Margaret B. Lee and John H. S. Lee, Jr., her children; and that "for the purpose of creating class representation" they are made parties defendant to the bill "to the end that the other unknown prospec-

tive heirs-at-law of said remaining living beneficiaries may be represented herein by class representation and may be bound to the same extent and in the same manner * * * as though they had been made parties defendant by name.''

The prayer of the bill is that the court ''determine and state whether or not complainant shall accept and carry out or reject said proposed offer of settlement and compromise so made by Thompson, by delivering and finally confirming the said supplemental or sub-lease, and that complainant may be fully instructed and advised as to its rights, duties and powers in the premises,'' and that complainant have such other relief as to equity may appertain.

Answers were filed by John R. Thompson, and by Jessie Condict Lee, her husband, and one of her daughters who had reached her majority, consenting to a decree in accordance with the prayer of the bill. As to the nonresident defendants service was had in the usual manner, and many of the defendants were defaulted and the bill taken as confessed as to them. On behalf of certain minor defendants a guardian *ad litem* was appointed and he filed a formal answer. Certain of the nonresident defendants filed appearances in which they admitted the allegations of the bill and consented to the entry of a decree as prayed for. On April 6, 1926, two of the defendants, Wallace R. Condict and Lucy Smith (each a beneficiary), filed a joint and several answer to the bill. On the same day Condict filed a cross-bill. On April 12, 1926, Lucy Smith filed a cross-bill, which, after being amended, was, on motions of complainant and said Thompson, stricken from the files by order of the court ''for reasons apparent upon the face of the record.'' Condict's cross-bill was not put at issue until after the entry of the decree appealed from. The court refused to hear the original bill and Condict's cross-bill together, but the court, in its decree, expressly retained jurisdiction

32 APPELLATE COURTS OF ILLINOIS.

Northern Trust Co. of Chicago v. Thompson, 245 Ill. App. 20.

of the cause for certain named purposes, including the future hearing and determining of the issues arising upon Condict's cross-bill.

In said answer of Condict and Lucy Smith, they admit the execution of the 99-year lease and the trust indenture as alleged in the bill, that the same are in full force and effect, and that the time for the sale and distribution of the trust estate has not yet arrived; but they deny that the present building on the Haskell premises is practically worthless or inadequate to the uses of the locality, or that it is for the best interests of the trust estate that it be removed and a more modern structure erected in its stead, or that any compromise on the basis of the offer made by Thompson is wise or desirable. Other allegations are made, particularly as regards Condict's interest in the rents and in the trust estate upon a final distribution, etc.

In the decree the court made many findings which are in substantial accord with the allegations of complainant's bill. Although finding that Thompson claims to be the owner of the leasehold estate and of the present building upon the Haskell premises, yet it is stated that "the court does not hereby pass upon the claims of said Thompson." After finding that disputes had arisen between the trustee and Thompson, and that the latter had made certain offers looking towards a settlement thereof, and after finding that the compromise agreement of December 16, 1925 (referred to by the court as the "proposed supplemental or sub-lease"), had been executed, subject to the court's approval and confirmation, the court found that, as a part of Thompson's offer of settlement to complainant (afterwards accepted by complainant), Thompson caused his duly authorized attorney, Henry Russell Platt, to write a letter to complainant, under date of November 4, 1925, wherein the offer was made in substance that as soon as said compromise agree-

ment had been ratified and confirmed by the court, Thompson would pay to complainant, as trustee, the costs and expenses of the suit, including a fee of $2,500 for the trustee, and the reasonable fees of its counsel and/or the counsel representing the beneficiaries (but not exceeding for counsel fees the total sum of $10,000) and also a guardian *ad litem's* fee, but that in case such a decree should not be obtained by April 30, 1926, said agreement might, at Thompson's option, be regarded as inoperative. And the court further found that the building, which Thompson "or his sub-lessee or assignee" proposes to erect upon the Haskell premises, "is to be a thoroughly modern fireproof building, and of a value far in excess of the present building now standing upon said premises, and that said building when completed will materially add to the security of said several leases, and that said premises will then be of a value greatly in excess of the value of said premises as the same are now improved." And the court adjudged and decreed in substance as follows:

(1) That the agreement of December 16, 1925, and the accepted offer from Henry Russell Platt are fair and equitable and for the best interests of the trust estate, and of the present and all future beneficiaries thereunder, and of the present and future holders and owners of the underlying fee of the leased premises.

(2) That, under the proper interpretation of the trust indenture of July 7, 1892, complainant had and now has the right and power to make said agreement of December 16, 1925, and to accept the offer evidenced by said letter of November 4, 1925, and thereby bind the trust estate and all persons interested or who may become interested therein.

(3) That said agreement of December 16, 1925, and the accepted offer contained in said letter are hereby approved, ratified and confirmed in all respects, and complainant, as trustee, is hereby directed immedi-

34    APPELLATE COURTS OF ILLINOIS.

Northern Trust Co. of Chicago v. Thompson, 245 Ill. App. 20.

ately to deliver to Thompson the agreement, and forthwith carry out and perform the same in all respects.

(4) That all of the acts, doings and conduct of complainant, and of its agents, with regard to the execution, delivery and carrying out of the agreement and the acceptance of said offer, and with regard to the bringing and conducting of this suit, are hereby in all respects and for all purposes approved; and that all defendants in this cause and all persons, whether now *in esse* or not, now or hereafter being or standing in like relation or interest as or in privity with said defendants are hereby forever precluded and barred from challenging or impeaching any of said acts, doings and conduct.

McNAB, HOLMES & LONG, MATTHIAS CONCANNON and MAYER, MEYER, AUSTRIAN & PLATT, for defendants; HENRY RUSSELL PLATT and M. PAUL NOYES, of counsel.

JOHN J. HEALY, for appellee Northern Trust Co. OWEN RALL, for appellees John H. S. Lee et al. ROSWELL B. MASON, guardian *ad litem*, for infant appellees.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

As grounds for a reversal of the decree, counsel for Condict and Lucy Smith here contend, as they strenuously urged before the chancellor, (1) that complainant, as trustee, under a proper interpretation of said trust indenture of July 7, 1892, has no power, express or implied, to execute the compromise agreement of December 16, 1925; (2) that, if such power in the trustee be lacking, a court of chancery is not justified, over the objections of adult beneficiaries of the trust, in so modifying and enlarging the terms of the trust instrument as to approve and confirm said compromise agreement, especially where the evidence does not disclose any *necessity* for such modification or en-

largement in order to preserve the trust estate from destruction or to carry out the main intentions of its creator; and (3) that the compromise agreement, as drafted, is not beneficial to the trust estate.

As to the first contention. In 26 R. C. L. 1372, § 232, it is said: "It is an elementary principle in the law of trusts that in the execution of a trust, the trustee is bound to comply strictly with the directions contained in the trust instrument, defining the extent and limits of his authority, and the nature of his powers and duties." In 3 Pomeroy's Eq. Juris. (4th Ed.), § 1062, it is said: "The trust itself, whatever it be, constitutes the charter of the trustee's powers and duties; from it he derives the rule of his conduct; it prescribes the extent and limits of his authority; it furnishes the measure of his obligations." In 2 Perry on Trusts (6th Ed.), § 475, it is said: "In a court of *law*, the trustee is the absolute owner of the estate, and he can exercise all the powers of ownership; * * * but *in equity* the *cestui que trust* is the owner, and the question in equity is, how far the trustee can act without exceeding his powers, and rendering himself responsible to the *cestui que trust*. * * * In trusts of a more particular and active kind, the general power of the trustee is limited to the exact performance of the duty imposed upon him. The duty and power given in such trusts must be strictly performed." By the trust indenture Mrs. Haskell conveyed to complainant, as trustee, the real estate (excepting the building thereon) and said 99-year lease of March 18, 1889, and empowered the trustee "to have and to hold" *both,* with all privileges and appurtenances, upon certain mentioned *express trusts,* viz, (1) to collect the rents of the property, at the times and in the manner provided in the lease, and, after deducting the trustee's reasonable charges and expenses, to pay over the same as specified, and (2), at the termination of the trust as specified "to sell

and convey the said real estate *and leasehold interest"* for the best price the same will bring in cash, and, after deducting the trustee's reasonable charges and expenses, to divide and distribute the proceeds of the sale as specified. It is also provided, in two separate clauses at the end of the instrument, that "in the performance of the trusts hereunder, the trustee shall be held only to fair and reasonable *diligence and discretion"*; and that, if for any reason the said lease "should become forfeited or at an end," *then and in that case* the trustee "shall have and is hereby given full power to manage, improve, control, lease, protect and care for" the trust estate and property, "according to its best judgment and discretion" but for the purposes and trusts provided for. Counsel for the trustee contended before the chancellor, and here contend, that, because of the language of these two clauses when read in connection with the other provisions, the trustee had at least the implied power to make with Thompson the compromise agreement. The chancellor evidently agreed with the contention for, in delivering his oral opinion (contained in the transcript), he said in part, after quoting from the second of said separate clauses: "Of course, it may be said that under the ordinary rules of construction *that* power is limited to—does not come into being until the contingency in question happens. But it occurs to me that the settlor had full knowledge of the fact that a forfeiture of the lease might occur, even within one year of the date of the execution of the instrument. If she was willing to give those large powers to the Trustee, in that event then it must have been her intention that the Trustee should have those general powers, at all events. I think that from *that* provision of the agreement the Trustee has an implied power to do these very things, because there is no reason for making the powers broader in the event of a termination of the lease, because that presents the same situation as it was at

the outset.'' We cannot agree with the contention of counsel for the trustee, or with the reasoning or conclusion of the chancellor in this regard. Inasmuch as by the trust indenture the said lease is made a part of the subject matter of the trust, and as the trustee is empowered ''to have and to hold'' the real estate and said lease until the termination of the trust and then to sell and convey the same, and as the trustee is directed and given full power (*if* the lease ''should become forfeited or at an end'') to do the things mentioned according to its discretion, we think that it was the intention of Mrs. Haskell that such discretionary power in the trustee to do such things was to be exercised *only in the event* that the lease should become forfeited or at an end (neither of which contingencies have happened). And we think that the giving to the trustee of such discretionary power, only in such event, excludes the idea that Mrs. Haskell intended to grant to the trustee any discretionary power to amend, change or modify said lease, *so long as it remained in force* (which the evidence shows was the case when the present bill was filed). And we think that the provision in the first of the two separate clauses (viz, that, in the performance of the trust, ''the Trustee shall be held only to fair and reasonable diligence and discretion'') was intended only to be a limitation on the possible liability of the trustee, while acting as such *within the limits of the powers* conferred upon it by the instrument. And we cannot believe that it was Mrs. Haskell's intention, by the use of the words of said clause, to extend or alter the trustee's power, granted by the other clauses of the instrument, so as to give it discretionary power to modify or change the lease (expressly made a part of the subject matter of the trust) and to make with Thompson such an agreement as the one in question, which the court refers to as a ''supplemental or sublease.'' It is well-settled law that ''a deed should be

so construed if possible as to give force to all its provisions." (*Walton v. Follansbee,* 131 Ill. 147, 158.)

Although there is no express provision in the lease granting to the lessees the right to remove the building upon the premises or to rebuild it, there is a covenant therein on their part that, "in case of loss or damage by fire *or otherwise* to the buildings, now upon said premises *or that may hereafter be erected thereon,*" they will "rebuild or repair the same within twelve (12) months thereafter, equal in value or condition to the building or buildings so destroyed or damaged." And counsel for the trustee further contended before the chancellor, and further contend here, that, because of the language of the covenant, and particularly the words italicized, the right in Thompson (assignee by mesne assignments from the original lessees) to remove the present building and erect another in its stead, and the power in the trustee to execute with Thompson the compromise agreement, may properly be implied. We cannot agree. It seems clear to us that said clause, as regards rebuilding or repairing the building, has reference only to the contingency where the building is destroyed or damaged by fire or other *casualty,* and affords no basis for the claimed implied power on the part of the trustee. And we fail to see wherein the holdings in the case of *Hawes v. Favor,* 161 Ill. 440, cited by counsel, are at variance with these views.

After considering the provisions of the trust indenture, taken in connection with the provisions of the lease, we are of the opinion that the first contention of counsel for Condict and Lucy Smith is well founded, and that the trustee, as such, has no power, express or implied, to execute the compromise agreement with Thompson, particularly where objections to such execution are made by two of the present adult beneficiaries of the estate. This brings us to the consideration of the question, raised by counsel's second con-

tention, whether, considering the provisions of the trust indenture, of the lease and of the compromise agreement, and also considering the evidence contained in the present transcript, the circuit court was justified, under the authorities, in so modifying and enlarging the terms of the trust indenture as to approve and confirm said agreement, against said objections.

There are numerous decisions in this State to the effect that, when exigencies arise, unforeseen by the creator of a trust, which can only be met by modifications of the terms of the trust, a court of chancery has power to make such modifications as are required to preserve the trust estate from destruction, or to carry out the main intentions of its creator. Among the cases holding that the particular facts warranted the exercise of such power are: *Curtiss v. Brown,* 29 Ill. 201; *Voris v. Sloan,* 68 Ill. 588; *Johns v. Montgomery,* 265 Ill. 21; *Marsh v. Reed,* 184 Ill. 263; *Cary v. Cary,* 309 Ill. 330. In the *Curtiss* case (p. 230), it is said: "Exigencies often arise not contemplated by the party creating the trust, and which, had they been anticipated, would undoubtedly have been provided for, where the aid of the court of chancery must be invoked to grant relief imperatively required; and in such cases the court must, as far as may be, occupy the place of the party creating the trust, and do with the fund what he would have dictated had he anticipated the emergency." In the *Voris* case (p. 592), it is said: "it is only in cases of the most urgent necessity that the terms of the trust will be changed." In the *Montgomery* case (p. 25) it is said that, while the power is exercised "with great caution," courts of chancery have not hesitated to direct "such necessary modifications as will preserve the trust estate for the use of the beneficiaries." In the *Marsh* case (p. 274) it is said that the court should exercise the power "to change the directions of the donor as to the course to

40        APPELLATE COURTS OF ILLINOIS.

Northern Trust Co. of Chicago v. Thompson, 245 Ill. App. 20.

be pursued in the mere matter of managing the trust property, when it is clearly made to appear that conditions are so changed and different as to *imperatively* require the substitution of some other course of management in order the purpose of the creator of the trust may be conserved and accomplished. The evidence in this case clearly demonstrates that without relief against the provision that the property shall not be leased for a longer period than ten years the trust property will be substantially unproductive and the purpose of the donor to provide an income for his children out of the income of said trust estate *wholly* defeated." In the *Cary* case (p. 335), it is said that the court will not authorize the modification "merely for the purpose of enabling the beneficiaries to receive a greater income from the property or use it in what they may regard as a more profitable manner than that provided by the trust. (*Johns v. Johns,* 172 Ill. 472.) Where a contingency arises, however, such that the estate may be totally lost to the beneficiaries of the trust, a court of equity will not permit such loss for lack of power to modify the terms of the trust." Among the cases holding that the particular facts did not warrant the exercise of the power are: *Johns v. Johns,* 172 Ill. 472, 485; *Johnson v. Buck,* 220 Ill. 226; *Stephens v. Collison,* 274 Ill. 389; *Gibbs v. Andrews,* 299 Ill. 510; *Outhet v. Follansbee,* 218 Ill. App. 512. In the *Buck* case (p. 236) it is held that, while the court has full power to authorize the conversion of property contrary to the prvisions of a will, and differing from the purpose and plans of the testator, where there is a necessity for such conversion for the preservation of the estate, there must be some important and controlling reason for the action, and that it "is not justified by the mere fact that the court may conclude some other plan than that of the testator would have been better." In the *Gibbs* case, *supra,* it was sought to obtain a decree authorizing the exchange of

CHICAGO—FIRST DISTRICT—JUNE, 1927.      41

Northern Trust Co. of Chicago v. Thompson, 245 Ill. App. 20.

one piece of real estate, alleged to be more valuable, for another piece devised to the testatrix's daughter, with remainder in fee simple to the heirs of her body. It was contended that the exchange should be allowed to be made by the court because it would be beneficial to the interests of all parties. This contention is somewhat similar to that of the trustee and Thompson in the present case wherein they urge that the court approve, because more beneficial to all parties in interest, the said compromise agreement, or "supplemental or sub-lease," and authorize its substitution for the lease which was in force at the time of the creation of the trust, and which the creator of the trust directed should be held by the trustee until the specified time of sale and then be sold with the real estate. But our Supreme Court, in the *Gibbs* case, citing with approval the *Johns v. Johns* case, *supra,* affirmed the decree of the circuit court wherein it refused to authorize the exchange, and said (p. 516): "It is not necessary in this case to make any change in the property devised for its protection or preservation from loss or destruction or to preserve the interests of the parties in the estate or the estate itself, or any other necessity of the most urgent character, and under well settled rules the decree of the court was in accordance with the law, and it is therefore affirmed." In the *Collison* case, *supra,* in which our Supreme court reversed a decree, wherein a certain compromise settlement had been ordered made, it is said (p. 394):

"The real question in this case for our decision is whether or not a court of equity has the power and the authority to entirely disregard the terms of a trust created by a will and to compel a party interested in the trust property to accept a compromise settlement of the trust estate against his will and against his interest *where all the other interested parties are willing and desire the settlement.* The court found and recites in the decree that it would be for the best

42 APPELLATE COURTS OF ILLINOIS.

Northern Trust Co. of Chicago v. Thompson, 245 Ill. App. 20.

interests of the estate of Josephus Martin and of all parties interested therein to accept the proposition of settlement submitted and thus to end the litigation, which has been long continued and expensive. * * * It cannot be questioned that the effect of the compromise and approval thereof by the court, and its decree ordering the parties to execute the compromise settlement upon the terms proposed, is to change the terms of the will of the testator, or, rather, to abrogate it altogether, and to vest title to the property devised by the will in trust, in the heirs and devisees according to the court's judgment of what is just and best for them. * * * (p. 397.) In the instant case there are no facts presented, and the decree makes no findings of facts, which show a necessity for the court's interfering with the plan of the trust as created by the testator. It is true, no doubt, that the litigation has been long and expensive, and it may be absolutely true that all parties would save more money or property to themselves by this compromise than to continue the litigation to a final conclusion. Plaintiff in error, however, insists that he will be injured by the settlement, We do not think he will be injured to the extent he claims he will in his argument, but we have no means of knowing or determining the extent of loss or benefit to anyone by the settlement. * * * This decision cannot rest upon the question whether or not any of the parties will be benefited or injured by the compromise. A trust created by a will cannot be altered or destroyed by a court of chancery on the sole ground that in the judgment of the court it will be beneficial to the parties in interest. (Citing cases, among them the *Johns v. Johns* and *Buck* cases, *supra*.) The will in the instant case gave no authority to the trustees or to the court to authorize the compromise in question, and the court had no power or authority to order such a settlement.''

We regard the holdings and decision in said *Collison* case as particularly applicable to the controlling question in the present case, viz, the court's *power* to alter certain provisions of the trust indenture (wherein the trustee is directed to hold the real estate and a specified lease, to collect the rents, etc., and at the termination of the trust to sell both the real estate and the lease) and compel all the beneficiaries, against the objection of two of them who are adults, to accept in substitution for the lease the compromise agreement (which is in effect a supplemental lease, containing provisions considerably different from those of the original lease), merely because the court, as well as the trustee, and as well as other beneficiaries (seemingly because of their default taken), are of the opinion that the execution of said agreement is for the best interests of the trust estate and all beneficiaries, but where the evidence does not disclose, and the court does not find, that there is any *necessity* for such action in order to preserve the trust estate from destruction or to carry out the main intentions of its creator.

Counsel for the trustee, as well as counsel for Thompson, to sustain the decree in question, especially rely upon the cases of *Marsh v. Reed, supra; Packard v. Illinois Trust & Savings Bank,* 261 Ill. 450; *Denegre v. Walker,* 214 Ill. 113; *Gavin v. Curtin,* 171 Ill. 640; and *Hale v. Hale,* 146 Ill. 227. The *Marsh* case has previously been referred to. In all of these cases the element of necessity for the court's action was present. In the *Denegre* case *all* of the adult parties in interest consented to the execution of the proposed long-time lease. But in the present case, after considering the facts and circumstances in evidence, we fail to find that there is any necessity shown, requiring the execution and approval by the court, of the compromise agreement in order to preserve the estate from destruction or to carry out the main intentions of Mrs. Haskell. Although it may be true that, consider-

44     APPELLATE COURTS OF ILLINOIS.

Northern Trust Co. of Chicago v. Thompson, 245 Ill. App. 20.

ing Thompson's best interests and the highest and best uses that the land can be put to, conditions in the neighborhood have so changed as to suggest the advisability of erecting upon the land, and upon the adjoining land which he controls, a new and more modern building, still we do not think that the evidence discloses that said changed conditions are such as endanger the present trust estate. Although it is true, if the compromise agreement be approved, that the annual rental coming to the estate will be increased to the extent of $5,000, we think it is a matter of considerable doubt, under the conflicting evidence, whether in the long run the approval and confirmation of the compromise agreement will be beneficial to the trust estate.

Counsel for the trustee also contend that, by section 50 of the Chancery Act, Cahill's St. ch. 22, ¶ 50, *as amended in 1911,* additional power than that which theretofore existed was conferred upon courts of chancery, viz, to "hear and determine bills to   *   *   * authorize trustees to lease, mortgage and sell, improve, exchange and invest any portion or all of any trust estate, or to do any other act or thing, or exercise any power and discretion which is necessary for the conservation, preservation, protection or betterment of said estate during any period of contingency pending a contingent remainder or executory devise or otherwise." We do not think that by the language of the amended portion of the section any greater power was conferred upon chancery courts over trustees than that which they theretofore had exercised, as sanctioned by the decisions of our Supreme Court above referred to. The necessity for the court's action, mentioned in said decisions, is still made by the amended statute an essential condition of the right of the court to act. If it should be considered (and we do not think it should) that greater power was conferred by the amended statute upon chancery courts

than that which they had theretofore lawfully exercised, and sufficient to warrant the entry of the present decree, it may properly be said, we think, that the amended statute should not be applied to a trust which came into being many years before said amended statute was passed. (*In re Will of Tuller*, 79 Ill. 99, 107; *Richardson v. United States Mortgage & Trust Co.*, 194 Ill. 259, 267; *Eddy v. Morgan*, 216 Ill. 437, 447.)

We, therefore, are of the opinion that, as to the second contention of counsel for Condict and Lucy Smith, the same is meritorious, and that, under the evidence, and the law as disclosed by the above cited authorities, the circuit court was not justified in entering, over the objections of Condict and Lucy Smith, the decree appealed from.

In view of our holdings, we do not think it necessary to discuss in detail the mass of conflicting evidence bearing upon the question, whether the approval of the compromise agreement would be beneficial to the trust estate. Nor is it necessary for us to consider the further contention of counsel for Condict and Lucy Smith that complainant's bill should be dismissed because of lack of necessary parties. Nor do we deem it necessary to consider the cross-errors assigned by Thompson to the effect that the court erred in failing to decree that he has a good title to, and is the owner of, the leasehold estate in question and the present building.

It is contended by counsel for the trustee and for Thompson that Condict is estopped by his conduct from raising the questions of the power of the trustee to execute the compromise agreement, or of the court to approve and confirm it. It is argued that the evidence discloses that, in the negotiations leading up to the execution of the agreement, Condict consented to its execution. While there is evidence tending to show that Condict in the earlier negotiations was in favor of the making by the trustee of some sort of a com-

46    APPELLATE COURTS OF ILLINOIS.

Northern Trust Co. of Chicago v. Thompson, 245 Ill. App. 20.

promise agreement or supplemental lease with Thompson, we do not think that it is shown by a preponderance of the evidence that Condict ever consented to the terms of the agreement as finally drafted and executed. Complainant's letter of December 19, 1925, written by its vice president in charge of trust matters (William S. Miller) to Condict, as well as to other beneficiaries, three days after said agreement was executed by complainant and Thompson and two days after the present bill was filed, militates against a contrary view. In the letter addressed to Condict he is advised that notice will soon be served upon him of the institution of a suit against Thompson and the beneficiaries under the trust indenture and that the purpose thereof is to secure judicial consent to the execution of an agreement, which "modifies and changes in some respects the original Haskell leases." After setting forth Thompson's desires, etc., mentioning prior negotiations, recommending that Thompson's offer be accepted and stating that in the trustee's opinion the confirmation of the agreement would be beneficial to the estate and all beneficiaries, the letter concludes: "*If you desire to object* to the arrangement you may do so in the pending suit and if you approve kindly let us know and we will send to you a form of appearance to be filed in court consenting to the acceptance of the offer." Furthermore, according to Condict's testimony, he first obtained a copy of the agreement on January 12, 1926, and before obtaining such copy he informed Miller he was going to oppose its confirmation by the court. But even if it can properly be considered under the conflicting evidence that Condict did consent to the terms of the agreement as finally drafted, and to its confirmation, still we do not think that he can be held to be equitably estopped from contesting its confirmation. The necessary elements of such an estoppel are lacking. Apparently the trustee placed no reliance upon Condict's claimed consent

and it neither did nor omitted to do any act, nor changed its position, because thereof. In *Powers v. Wells*, 244 Ill. 558, 570, it is said: "It is an essential element of an equitable estoppel that the person asserting it shall have done or omitted some act or changed his position in reliance upon the representations or conduct of the person sought to be estopped." (See, also, *Sutter v. People's Gas Light & Coke Co.*, 284 Ill. 634, 639–640.) Furthermore, it does not appear from the evidence that Lucy Smith, the equitable owner of one-sixth of the trust estate, ever consented, either expressly or impliedly, to the confirmation of the agreement, and clearly no estoppel can be invoked as to her.

Our conclusion is that the circuit court erred in entering the decree appealed from over the objection of Condict and Lucy Smith, and our order is that it be reversed and the cause be remanded with directions to the circuit court to dismiss complainant's bill. The effect of this order, as we understand the general rule, will be to carry with it the dismissal, though without prejudice, of the cross-bill of Wallace R. Condict (21 C. J. 514, § 616½; *Glos v. People*, 259 Ill. 332, 348.) And as to said cross-bill, we think such a result is proper, though complainant and other parties made defendants have filed answers thereto and the court by said decree retained jurisdiction of the cause and the parties to determine on a further hearing "all issues arising upon" said cross-bill, because, in our opinion, said cross-bill is not germane to complainant's bill and the equitable relief prayed for therein. In *Patterson v. Northern Trust Co.*, 231 Ill. 22, 26, it is said: "A cross-bill must be confined to the subject matter of the original bill, and cannot introduce new and distinct matters not embraced in the original bill. * * * Matters in the cross-bill must be germane to the matter involved in the original bill. The new facts which it is proper for the defendant to intro-

duce thereby are such, and such only, as are necessary for the court to have before it in deciding the questions raised in the original suit, to enable it to do full and complete justice to all the parties before it in respect to the cause of action on which the complainant rests his right to aid or relief." (See, also, *Hurlbut v. Talbot*, 273 Ill. 299, 306; *Hollan v. Kepner*, 297 Ill. 332, 336.)

*Reversed and remanded with directions.*

FITCH and BARNES, JJ., concur.