Terry DUNKER, Plaintiff–Appellee,

v.

George REICHMAN,
Defendant–Appellant.

No. 86–3059.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 9, 1987.

Decided March 2, 1988.

Jonathan H. Barnard, Schmiedeskamp, Robertson, Neu & Mitchell, Quincy, Ill., for defendant-appellant.

Charles E. Rendlen, Rendlen, Rendlen Ahrens Browne & Rendlen, P.C., Hannibal, Mo., for plaintiff-appellee.

Before CUMMINGS, COFFEY, and EASTERBROOK, Circuit Judges.

COFFEY, Circuit Judge.

Defendant-appellant George Reichman appeals from the judgment of the district court in favor of the plaintiff-appellee Terry Dunker of a $45,000 damage award for breach of an oral agreement. We affirm.

I.

In the 1930's, the United States Corps of Engineers constructed dams on the Mississippi River for navigational purposes. At the time these dams were constructed, levees were in place along the Mississippi to protect adjoining farmlands from flooding. After the dams were completed, the level of the Mississippi was raised, thus forcing water into and under the levee since the construction of the dams, causing seepage onto the Reichman land and damaging their farm, located in the State of Illinois.

In 1966, Annette Reichman placed the Reichman farm into a trust, naming herself as sole income beneficiary and as co-trustee with her son, defendant George Reichman. The trust agreement provided, in pertinent part, as follows:

"TRUST AGREEMENT

This Agreement is entered into this *27th* day of *July*, 1966, between AN-NETTE REICHMAN, the unremarried widow of J.J. Reichman, called 'Grantor',

and ANNETTE REICHMAN and GEORGE REICHMAN, called 'Trustees'.

Grantor is simultaneously with the execution of this Trust Agreement, conveying certain real estate to ANNETTE REICHMAN and GEORGE REICHMAN, Trustees, to be held in trust and designated as the 'ANNETTE REICHMAN TRUST'. The ANNETTE REICHMAN TRUST shall be held, administered and distributed upon the terms and conditions hereinafter set forth.

. . . .

## ARTICLE III

A. If Grantor's son, GEORGE REICHMAN, survives Grantor, the Trust Estate, if not sooner terminated under the provisions of ARTICLE V hereof, shall terminate as of the date of Grantor's death and the remaining Trustee shall pay and distribute the entire principal of the Trust Estate, together with all undistributed income therefrom to GEORGE REICHMAN, free and clear of this trust.

. . . .

## ARTICLE VII

In the investment, administration and distribution of the Trust Estate, the Trustees and the beneficiaries hereunder shall be governed by the following:

A. Subject only to their duty to hold and administer the trust property for the purposes herein specified, the Trustees may perform every act and exercise every power in the management of the Trust Estate which individuals may perform and exercise in the management of like property owned by them, free of any trust, and they shall have all the rights, powers and discretions generally granted to trustees by law. Without limiting the generality of the foregoing, the Trustees shall have the following powers:

1. To take possession of, collect, hold, administer, control, manage, operate, care for and protect, improve, alter, *contract with respect to*, convert, exchange, lease for terms both within and beyond the duration of the trust, pledge, mortgage, hypothecate or otherwise encumber, grant, and exercise options with respect to, assign, convey, transfer, release, sell at public or private sale with or without notice, for either cash or credit or for both, or otherwise dispose of and deal in and with the trust property and additions thereto and substitutes therefor, and in general to do any and every act and thing and *to enter into and carry out any agreement with respect to such trust property or any part thereof which Grantor might do as an individual*, upon such terms and conditions as the Trustees determine to be to the best interest of the Trust Estate.

. . . .

G. No person dealing with the Trustees shall be obligated to inquire as to their power or to see to the application of property or funds paid or delivered to the Trustees.

. . . .

I. Either Trustee is authorized to delegate to the other Trustee the exercise of any or all powers, discretionary or otherwise, and to revoke any such delegation at will. The delegation of any such power, and also the revocation of any such delegation, shall be evidenced by an instrument in writing executed and acknowledged and delivered to the other Trustee. So long as any such delegation is in effect, any of the powers, discretionary or otherwise, hereby granted and so delegated, may be exercised and action taken by the other Trustee with the same force and effect as if the Trustee delegating such power had personally joined in the exercise of such power and taking of such action.

. . . .

## ARTICLE VIII

This instrument shall be construed and administered, and the validity of the trusts hereby created shall be determined, in accordance with the laws of the State of Illinois. In the interpretation

and construction of the provisions of this instrument, the following shall control:

. . . .

B. The masculine gender shall be deemed to include the feminine and the neuter, and the singular shall be deemed to include the plural, and vice versa." (Emphasis added).

In February 1967, plaintiff Terry Dunker executed a lease with Annette and George Reichman as co-trustees to farm the Reichman farm. According to Dunker, he approached Annette Reichman in 1973 or 1974 to discuss a claim she might have against the government for the continuous seepage damage to the Reichman farm. Mrs. Reichman was reluctant at that time to pursue a claim because of the legal expenses involved. After further discussions, Dunker claims that in March 1975, he and Mrs. Reichman reached an oral agreement whereby Dunker would pay for any of the necessary expenses involved in pursuing the claim in exchange for a 50/50 split of any damage award paid by the government. He stated that no one else was present when the oral agreement was entered into and the agreement was never reduced to writing. Dunker also claims that he had no knowledge at that time that the Reichman farm was held in trust by Annette and George as co-trustees, and that he had not read much less understood the 1967 lease he signed with Annette and George as co-trustees.

George Reichman pursued the landowner claim for the seepage damage in June 1979 after he was contacted by William T. Gard, the superintendent of the Sny Island Drainage District, the entity in charge of flood control and drainage services for the area.

After Annette Reichman died in December 1979, George Reichman, the sole surviving trustee, entered into an agreement with the Sny Island Drainage District whereby he eventually received $180,513 from the federal government for the seepage damage. Dunker, after becoming aware of the settlement offer and believing that he had fulfilled his end of the bargain by obligating himself to pay for an engineering report on the seepage damage, approached George and requested his share of the award. When George refused to pay, Dunker instituted suit in state court alleging, *inter alia,* breach of the oral contract between himself and Annette.

The suit was removed to federal court based on diversity jurisdiction. On November 5, 1986, Reichman filed a motion in limine before trial to prevent Dunker from testifying as to any conversation he had with Annette. The grounds in support were two-fold: (1) that any "conversations with Annette Reichman ... purporting to contractually bind the Annette Reichman Trust ... [are] rendered incompetent by Section 8–301 of Illinois Evidence Act;"[1] and (2) that Dunker's testimony concerning Annette Reichman's individual authority to bind the trust was inadmissible because "Illinois case law is clear that a cotrustee has no authority to bind a trust individually, absent agreement to the contrary" and "by the terms of the Trust only upon written authorization could Annette Reichman bind the Trust individually." The district court denied the motion in limine on November 12, 1986, and the case proceeded to trial and was submitted to the jury. The

1. This section provides:
"In any action or proceeding by or against any surviving partner or partners, or joint contractor or joint contractors, no adverse party or person adversely interested in the event thereof, shall, by virtue of Section 8–101 of this Act, be rendered a competent witness to testify to any admission or conversation by any deceased partner or joint contractor, unless some one or more of the surviving partners or joint contractors were also present at the time of such admission or conversation; and in every action or proceeding a party to the same who has contracted with an agent of the adverse party—the agent having since died —shall not be a competent witness as to any admission or conversation between himself or herself and such agent, unless such admission or conversation with the deceased agent was had or made in the presence of a surviving agent or agents of such adverse party, and then only except where the conditions are such that under the provisions of sections 8–201 and 8–401 of this Act he or she would have been permitted to testify if the deceased person had been a principal and not an agent."

jury returned a verdict in favor of Dunker and awarded him $45,000 in damages.

## II.

On appeal, Reichman argues that the district court erred in ruling that Annette individually had the authority under the terms of the trust agreement to act to bind the trust. Reichman contends that throughout the trust agreement, the grantor delineated and limited the powers and duties of one co-trustee to be vested with the authority to act alone by using the singular and the powers and duties requiring both co-trustees' consent by employing the plural. For example, Article VII, paragraph A(1) provided that the *trustees* had the power to contractually bind the trust, and under paragraph I, neither *trustee* was authorized to act on behalf of the other unless given the authority to do so in writing. According to Reichman, Annette was not authorized without his written consent to act alone, specifically enter into a binding agreement with Dunker since the trust provisions required that trustees act jointly in order to be bound by any contract.

■ Illinois law [2] provides that as a general rule, co-trustees form one collective trustee and hence must perform their duties in their joint capacity. *Dingman v. Boyle*, 285 Ill. 144, 147, 120 N.E. 487, 489 (1918). As such, a single trustee, without the consent of the remaining trustees, lacks the authority to enter into binding agreements with third parties merely because a trust agreement may have given such authority to co-trustees. *Sheets v. Security First Mortgage Co.*, 293 Ill.App. 222, 234, 12 N.E.2d 324, 330 (1937). It is also axiomatic that the limits of a trustee's powers are determined by the plain and unambiguous language of the instrument creating the trust. *Stuart v. Continental Illinois National Bank*, 68 Ill.2d 502, 523, 12 Ill.Dec. 248, 257, 369 N.E.2d 1262, 1271 (1977), *cert. denied*, 444 U.S. 844, 100 S.Ct. 86, 62 L.Ed.2d 56 (1979). Moreover, the court's role is limited to establishing not what the settlor meant to say, but what was meant by what he did say. *Williams v. Springfield Marine Bank*, 131 Ill.App. 3d 417, 420, 86 Ill.Dec. 743, 745–46, 475 N.E.2d 1122, 1124–25 (1985). As the Illinois Court of Appeals stated, "The court's function, therefore, is not to modify the trust or create new terms different from those to which the parties have agreed." *Id.*

■ In this case, Article VIII, paragraph B provided that in construing the trust, "the singular shall be deemed to include the plural, and vice versa." As such, the provision of Section VII, paragraph A(1) granting the trustees the power to contractually bind the trust meant that either trustee acting alone could legally bind the trust. The terms in Section VII, paragraph A(1) of the trust agreement giving either trustee the power to enter into agreements concerning the trust property gave Annette the power to individually contract with Dunker concerning any damages received from the government for the seepage, and the district court did not err in denying Reichman's motion in limine on this ground.[3]

## III.

■ Reichman also submits that the district court erred in allowing Dunker to

---

**2.** The parties and the district court agreed that Illinois law governed the merits of this case, and we will not disturb the district court's choice of law where neither party objected to that choice in the district court, absent some compelling reason of policy. *International Adm'rs v. Life Ins. Co.*, 753 F.2d 1373, 1376 (7th Cir.1985).

**3.** On appeal, Reichman argues several other grounds for reversing the district court's decision, such as: (1) he could not be bound by the agreement because he was not a party to it; and (2) he, as the ultimate beneficiary, and the trust estate are not liable for Annette's breached promise because Dunker had to assert his claim against Annette, the liable co-trustee. As demonstrated by our quotations from Reichman's motion in limine in the text of this opinion, *supra*, these grounds were not raised in the district court in this motion. Neither were they raised in Reichman's motion to dismiss nor in his affirmative defenses. Thus, they may not be raised for the first time on appeal. *Morris v. Jenkins*, 819 F.2d 678, 681 (7th Cir.1987) (per curiam).

testify as to the conversations he had with Annette concerning their oral agreement because they are rendered incompetent under Ill.Rev.Stat. ch. 110, para. 8–301.[4] This section provides:

"In any action or proceeding by or against any surviving partner or partners, or joint contractor or joint contractors, no adverse party or person adversely interested in the event thereof, shall, by virtue of Section 8–101 of this Act, be rendered a competent witness to testify to any admission or conversation by any deceased partner or joint contractor, unless some one or more of the surviving partners or joint contractors were also present at the time of such admission or conversation; and in every action or proceeding a party to the same who has contracted with an agent of the adverse party—the agent having since died—shall not be a competent witness as to any admission or conversation between himself or herself and such agent, unless such admission or conversation with the deceased agent was had or made in the presence of a surviving agent or agents of such adverse party, and then only except where the conditions are such that under the provisions of sections 8–201 and 8–401 of this Act he or she would have been permitted to testify if the deceased person had been a principal and not an agent."

The first portion of this statute prohibiting a witness from testifying as to conversations by a deceased partner or joint contractor is inapplicable because the parties to this lawsuit and Annette Reichman were not partners or joint contractors. Moreover, the second part of this statute prohibiting a party from testifying about any conversations with a deceased agent does not apply because Annette Reichman was not acting as George's agent when she entered into the oral agreement with Dunker; instead, she was acting as a co-trustee

under the power granted to her under the trust agreement to enter individually into a binding contract with a third party. Hence, we hold that the question as to the admissibility of Dunker's testimony is governed by Ill.Rev.Stat. ch. 110, para. 8–101, which provides, "No person shall be disqualified as a witness in any action or proceeding, except as hereinafter stated, by reason of his or her interest in the event thereof, as a party or otherwise ...; but such interest ... may be shown for the purpose of affecting the credibility of such witness."[5] We hold Dunker's testimony concerning his conversations with Annette Reichman was admissible.

## IV.

The decision of the district court is AFFIRMED.

---

4. Under Federal Rule of Evidence 601, Illinois law governed questions of witness competency in this diversity case.

5. Reichman also maintains on appeal that the conversations were inadmissible under the Illinois Dead Man's Statute, Ill.Rev.Stat. ch. 110, para. 8–201. Again, this argument was not presented to the district court and thus cannot be raised for the first time on appeal. *Morris*, 819 F.2d at 681.